THERESA WALSH, administratrix, *vs.* JOHN H. GILLIS.

Essex.    May 12, 1931. — June 23, 1931.

Present: CROSBY, PIERCE, CARROLL, WAIT, & FIELD, JJ.

*Negligence,* Motor vehicle, In use of way, Contributory.  *Practice, Civil,*
Charge to jury, Exceptions.

At the trial of an action of tort by an administrator for the death of
his intestate, a pedestrian, who was struck at night by an auto-
mobile operated by the defendant at the end of a bridge, at which
place the way narrowed and a street car track swung over from
the center to the right side, leaving about enough room between
the track and the curb on the left for two automobiles to pass
abreast, there was evidence that the automobile was travelling at
about twenty-five miles per hour as it approached the bridge; that
it crossed the car tracks and its lights "picked up" the intestate; and
that it went to the left of the way, where it struck the intestate, who
was standing three or four feet from the curb on the defendant's left,
and then crossed to the right and stopped twenty-five to thirty yards
away.  There was substantially no evidence as to how or when the
intestate reached the point near the place of the accident, or as to why
he left the sidewalk.  *Held,* that the questions, whether the defendant
was negligent and the intestate was guilty of contributory negligence,
were for the jury.

An exception, by the defendant at the trial above described, to portions
of the charge to the jury which were not warranted by anything in
the evidence and which constituted substantial error prejudicial to
the defendant, was not sustained in view of a subsequent specific
instruction, at the request of the defendant, that what the judge had
said previously was merely by way of illustration and that the jury
should disregard it except as such.

TORT for causing the conscious suffering and death of the
plaintiff's intestate.  Writ dated September 14, 1929.

The action was tried in the Superior Court before *Dillon,* J.
Material evidence and portions of the judge's charge to the
jury are described in the opinion.  The judge denied a motion
by the defendant that a verdict be ordered in his favor.
There was a verdict for the defendant on the count for con-
scious suffering and a verdict for the plaintiff in the sum of
$8,000 on the count for death.  The defendant alleged
exceptions.

*A. E. Yont*, for the defendant.

*C. F. Albert*, (*R. J. Walsh* with him,) for the plaintiff.

PIERCE, J.   This is an action of tort to recover damages for the conscious suffering and death of the plaintiff's intestate, alleged to have been caused by the negligence of the defendant.   The jury found for the defendant on the count for conscious suffering and returned a verdict for the plaintiff on the death count.   The case is before this court on the defendant's exceptions to the denial of his motion for a directed verdict and to exceptions saved by the defendant to certain portions of the instructions of the presiding judge.   The bill of exceptions contains all the material evidence.

The accident and the alleged injury were the result of a collision between the plaintiff's intestate and an automobile operated by the defendant, which occurred in Lawrence on August 31, 1929, at about eleven o'clock in the evening, at a point near the southern end of a bridge on South Union Street.   By undisputed testimony of the defendant and others, it appeared at the trial that as one travels northerly on South Union Street, approaching the bridge above referred to, the highway narrows a little and a street car track swings over from the center of the street to the right so as to occupy the extreme right or easterly portion of the bridge; that the roadway between the car tracks and the sidewalk on the westerly side of the bridge was "just about" wide enough for two automobiles to pass with a street car on the tracks; that there is a slight down grade from Merrimac Street, which crosses South Union Street on the south of the bridge, to the southerly end of the bridge; that at the time of and before the collision the street lights and bridge light were lighted.

The defendant testified, in substance, that he knew pedestrians came across the bridge on the westerly sidewalk on his left as he was travelling, but did not know that when they came to the end of the sidewalk on the southerly end of the bridge they many times crossed Union and Merrimac streets at that point.   He further testified, in substance, that as he approached the bridge he saw a

street car coming toward him and he swung across so that the street car was on his right and approximately opposite his car at the instant of the collision; that he was looking ahead, his car was lighted and there were street lights in the locality; that he was travelling at a speed of approximately fifteen to twenty miles an hour; that he did not see the plaintiff's intestate but suddenly, at about the instant the front of his car had reached the bridge, he heard a sound on the side of his car which sounded like the crashing of glass; that when he heard the crash he applied the brake, turned his car over to the right, "parked his car and, going back, found the form of the plaintiff's intestate lying on the bridge"; that the glass in the left hand door was broken and there was a dent on the side of the car just below the window. He further testified that when he was about fifty feet from the bridge, approaching it, there were automobiles coming from the other direction in about the middle of the bridge; that at the moment of the accident his car was half way onto the bridge, about five feet from the left sidewalk and that he turned to the right hand side of the bridge where he belonged to get out of the way of the oncoming automobiles and not because of the impact.

A driver of an automobile noticed ahead of him the defendant's automobile travelling in the same direction and observed that its lights "picked up" a man on the bridge; that the defendant's automobile went to the extreme left of the highway at the beginning of the bridge; that the man was knocked down, and that the defendant's automobile continued to the first light before stopping, a distance estimated by the witness to be about twenty-five to thirty yards. The same witness testified that the first time he saw the plaintiff's intestate was when the defendant's automobile turned to the left and its lights "picked" him up; that the intestate was then about fifteen feet ahead of the defendant's automobile, about two feet from the curb, and that he took about two steps before he was struck; that the witness's automobile was travelling at a speed of about twenty-five miles an hour, and the defendant's, as it swung across the track, was going at about the same speed which was not slackened until it got

to the first light on the bridge. The defendant testified that the point where he crossed the street car tracks was about ninety to one hundred feet from the southerly entrance to the bridge and that he did not attempt to avoid the street car.

The testimony of the driver of the automobile which was following and distant about thirty yards from the defendant's automobile was corroborated in all material particulars by a passenger in that witness's automobile. In addition, the passenger witness testified that he saw the intestate walk out near the end of the pipe line which forms a portion of the bridge and was shown in photographs exhibited at the trial; that when the body fell it was on the left hand side of the automobile probably three or four feet from the left hand curbing; that as he saw the man prior to the accident his face was turned to the left or to the other end of the bridge, and that immediately after the accident the defendant's automobile swung over to the right and someone got out and helped take care of the injured man. This witness testified that he was certain there were no other automobiles nearer than the other end of the bridge, because he had a clear view and looked down the bridge to see if the defendant's automobile was to continue without stopping.

Other than may be inferred from the evidence "that prior to the accident the plaintiff's intestate stopped at a lunch room several hundred feet away from the accident, northerly from the bridge, and made some inquiries and then left the lunch room," there is no evidence in the record as to how or when he reached the point near the place of the accident, or as to why he left the sidewalk, especially if the jury should find, as they were warranted in doing, that immediately prior to the accident there was no street car upon or about to leave the bridge to go in a southerly direction.

The motion for a directed verdict for the defendant based on the contention that the collision and injury were not due to the negligence of the defendant was denied rightly, for the reason that the evidence shown by the record warranted the jury in finding that the defendant, as he made the turn across the car tracks, described in the evidence, should have seen the perilous position of the plaintiff's intestate and avoided

the collision by stopping or changing the direction of his automobile, one or both actions being reasonably feasible and adequate to protect the intestate if the defendant when he should have seen him was not hindered by driving at a rate of speed which in the circumstances was greater than was reasonably proper. G. L. c. 90, § 17. The evidence did not warrant a directed verdict for the defendant on the ground that the intestate was not in the exercise of due care.

We do not think any useful purpose requires that there should here be set down the parts of the charge excepted to by the defendant, wherein the judge referred to the possibility of the plaintiff's intestate attempting to take the street car on his way home to North Andover. There is nothing in the record which warranted the instructions complained of, whether what the judge said be treated as illustrative or inferences of fact. The error was substantial and prejudicial to the defendant, and a new trial would be required were it not for the address of the presiding judge to the jury, in response to the defendant's request, which follows: "Now, then on the other hand, in so far as I spoke to you about the street car coming and this man stepping out at the time of the approaching street car; I used that merely as an illustration. I don't know whether that car goes to Andover or where it goes; there might be car barns next to the mill, and it may have gone in there, but I simply used it as an illustration of the drawing of an inference. Now, so far as having any bearing on this case, other than as an illustration in a charge, I direct you to disregard and totally banish it from your thoughts and give it no weight whatever. I don't know as I can make it any plainer." It is evident from the report of the conference at the bench that the judge supposed that what he afterwards said to the jury cured the just complaint to his charge. If the defendant believed it to be in any respect insufficient to that end he should at the close of the charge have pointed out and indicated wherein it was deficient. Failing so to do he should not be permitted to complain further of it after verdict.

*Exceptions overruled.*