GUISEPPI DEFRANCISCO, administrator, *vs.* HOWARD K. HEATH.

Essex.   March 4, 1940. — September 10, 1940.

Present: FIELD, C.J., DONAHUE, LUMMUS, QUA, & DOLAN, JJ.

*Negligence,* Motor vehicle, In use of way, Contributory.

On evidence that, driving at forty miles an hour in a thickly settled section of a city in the day time, the operator of an automobile approached an intersection where he saw a boy near the heads of the horses of an ice wagon parked at the right side of the street beside an automobile standing at the curb, "knew it was a dangerous situation," and upon swinging to the left past the ice wagon, struck the boy, a finding that the operator was negligent was warranted, and a finding that the boy was contributorily negligent was not required.

TORT. Writ in the District Court of Lawrence dated January 11, 1937.

Upon removal to the Superior Court, the action was tried before *Baker,* J. The verdict for the plaintiff was in the sum of $1,120.

*A. X. Dooley,* for the defendant.

*M. Ravich,* for the plaintiff.

DOLAN, J. This is an action of tort in which the plaintiff as administrator of the estate of his minor son seeks to recover for the conscious suffering and death of the deceased. The case was tried to a jury. At the close of the evidence the defendant's motion for a directed verdict on both counts was denied, subject to his exceptions. In submitting the case to the jury the judge directed them to

answer the following questions: "1. Was the defendant . . . negligent? 2. Was the deceased in the exercise of due care?" The jury answered both questions in the affirmative and returned a verdict for the defendant on the count for conscious suffering and a verdict for the plaintiff on the count for death. The judge with the assent of the jury reserved leave to enter a verdict for the defendant on the count for death, and later, subject to the latter's exception, denied his motion that a verdict be entered for him.

The evidence in its aspect most favorable to the plaintiff would warrant the jury in finding the following facts: The accident occurred at about 1:30 P.M. on Saturday, October 3, 1936, on Newbury Street in Lawrence, just south of the intersection of that street with Summer Street. Newbury Street runs "north and south" and is crossed by Summer Street which runs "east and west." At the time of the accident the weather was fair and the streets were dry. Newbury Street is thirty-four feet wide from curb to curb at the place of the accident. There are two street railway tracks on that street, the inbound tracks "being west," the outbound tracks "being east" of the middle line of the street. The center line between the inbound and outbound tracks is the middle line of the street. The distance from the most easterly rail to the easterly curb and from the most westerly rail to the westerly curb is in each case nine feet, eight inches. The locus involved is in a thickly settled section of the city.

The deceased, who was ten years old, lived with his parents. He left his home at about 1:20 P.M. to attend a motion picture theatre situated "west of Newbury Street," on the southerly side of Summer Street. At the time of the accident he had a bag of candy in one hand, and in the other a ticket for the theatre. One Catalano conducted a store at the southeast corner of Newbury and Summer streets. An automobile was parked at the curb opposite his store, and an ice wagon drawn by two horses and facing north was stopped beside this automobile. The body of the ice wagon extended into the easterly car tracks, "with the horses' heads over the southerly line of the intersec-

tion." The deceased was in front of the ice wagon. He "was near the head[s] of the horses, about on a line with the horses' heads." He was not in contact with the ice wagon when he was struck by the defendant's automobile.

The defendant was proceeding northerly on Newbury Street and, although his view was obstructed, he cut out to the left to pass the ice wagon. It was when he saw an automobile in front of him swing to the left that he noticed the ice wagon "stopped" on the easterly side of Newbury Street, and the automobile parked between the ice wagon and the easterly curb, and that south of that automobile another automobile was parked at the easterly curb. Swinging to the left of the ice wagon, the defendant continued on his own admission at a speed of twenty to twenty-five miles an hour. There was evidence, however, that he was operating at a speed of thirty-five to forty miles an hour. He first saw the deceased when he (the defendant) was thirty to forty feet from the ice wagon, and "knew it was a dangerous situation." He testified that he "pulled out wide to give him [the deceased] two and one half or three feet." As the defendant passed the ice wagon there was a space three or more feet wide between the ice wagon and his vehicle. The defendant's automobile collided with the deceased, throwing him beneath the ice wagon, which at that moment started. Its left rear wheel passed over the head of the deceased. As a result he died.

It is true that there was much evidence from which the jury could have found that the deceased was leaning over the tailboard of the ice wagon when seen by the defendant, and that in darting away suddenly he collided with the defendant's automobile. The jury, however, were not obliged to believe that evidence. They could choose what to believe and what to disbelieve, *Guinan* v. *Famous Players-Lasky Corp.* 267 Mass. 501, 518, 519, and under the familiar rule we must consider the case in that aspect of the evidence most favorable to the plaintiff. On that aspect of the evidence the jury could have found that when struck by the defendant's automobile, the deceased was "near the head[s]" of the horses, which protruded into the inter-

section; that he was a pedestrian upon the travelled part of a public way; that the defendant was operating at a rate of speed of thirty-five to forty miles an hour while approaching a pedestrian and an intersection, and that his view of the intersection was obstructed, and that these violations of G. L. (Ter. Ed.) c. 90, §§ 14, 17, constituted negligence on his part which bore a causal relation to the accident (*Baggs* v. *Hirschfield*, 293 Mass. 1). The defendant admitted that he knew that it was "a dangerous situation." The jury could find that in failing to stop he was negligent. *Walsh* v. *Gillis*, 276 Mass. 93, 96. The accident happened in the daylight and the deceased was admittedly in plain view of the defendant when the latter was at a distance from him of thirty to forty feet. Yet it could be found that the defendant, knowing that the situation was a dangerous one, did not stop his vehicle as he could have done had he not been hindered by the fact that he was driving at an improper rate of speed. (G. L. [Ter. Ed.] c. 90, § 17.) *Walsh* v. *Gillis*, 276 Mass. 93, 96–97.

In the circumstances the deceased had a right to rely to some extent on the expectation that the defendant would exercise a proper degree of care for his (the deceased's) safety. *Snow* v. *Boston Elevated Railway*, 303 Mass. 420, 423, and cases cited.

We are of opinion that it could not properly have been ruled that the deceased was guilty of contributory negligence, and that the issues of his due care and of the defendant's negligence were properly submitted to the jury.

*Exceptions overruled.*