CLIFFORD L. WRIGHT, administrator, *vs.* ELIZABETH C. CARLSON, administratrix,

(and three companion cases [1]).

Middlesex.　November 5, 1942. — December 29, 1942.

Present: FIELD, C.J., DONAHUE, QUA, COX, & RONAN, JJ.

*Negligence,* Motor vehicle, Use of way, Contributory, Violation of law, Coasting. *Way,* Public: coasting. *Pleading, Civil,* Answer.

A finding of negligence of the operator of a taxicab which on an icy and slippery street struck a child who coasted on a sled into the street from an adjacent slope concealed from the operator's view "to a certain extent" was warranted by evidence of unreasonable and improper speed of the taxicab and failure of the operator to see the child seasonably.

A defendant who in his answer set up contributory negligence, but not violation by the plaintiff of an ordinance respecting coasting, in defence to an action resulting from the defendant's motor vehicle striking the plaintiff while he was coasting, was entitled to have violation of the ordinance considered only on the issue of contributory negligence.

Evidence, that a child lying on his stomach on a sled at the top of a slope was pushed by another child, coasted down the slope into a street with his feet dragging all the way, and was struck in the street by a motor vehicle, warranted a finding that the coasting in the street was wholly involuntary on his part and did not require a ruling that he was guilty of contributory negligence although coasting on that street was prohibited by an ordinance.

FOUR ACTIONS OF TORT. Writs in the First District Court of Eastern Middlesex dated August 31, 1938.

Upon removal to the Superior Court, the actions were tried before *Greenhalge,* J. There were verdicts for the plaintiffs and the defendants alleged exceptions.

*R. W. Cornell,* for the defendants.

*W. G. Guernsey,* for the plaintiffs.

COX, J. These are four actions of tort, two of which are brought to recover damages for the death and conscious suffering of the plaintiff's intestate, his daughter, a girl of

---

[1] The companion cases are Wright, administrator, *v.* Rose; Wright *v.* Carlson, administratrix; Wright *v.* Rose.

eight years, against the administratrix of one Carlson, the owner of a taxicab, and its operator, the defendant Rose, who was Carlson's agent, the other two actions being against the same defendants to recover consequential damages incurred by the father. The injuries to the girl, as a result of which it could have been found that she died after suffering consciously, were sustained in the early afternoon of December 31, 1938, on Orris Street, in Melrose, in front of what is known as the Crosby estate.

Orris Street runs substantially east and west, and, at the time of the girl's injuries, an ordinance of Melrose prohibited coasting on any street or portion thereof, unless such street had been designated for such purpose by the superintendent of public works. At that time streets had been so designated, but Orris Street was not one of them. The front of the Crosby house is about one hundred feet from Orris Street, and the intervening lawn is sloping, the house standing on a knoll with a terrace in front of it. A driveway, which runs diagonally across the lawn from the garage which is situated in the rear and to the west of the house, ends at Orris Street at the extreme easterly end of the Crosby premises, which have a frontage on the street of about one hundred twenty feet. The land fronting on Orris Street and westerly of the Crosby premises rises more abruptly from the Orris Street sidewalk than it does from the sidewalk to the Crosby house. A point where a right angle line drawn from the center of the Crosby house intersects the sidewalk is about fifty-five feet west of the easterly line of the driveway. The rise to the west of the Crosby property interferes "to a certain extent" with the view of the "sloping lawn" of an operator of a motor vehicle travelling to the east on Orris Street. The jury took a view.

The jury could have found that on the day in question at about two o'clock the plaintiff's intestate and her sister, who was eleven years old, together with three younger boys who were between the ages of five and seven, began to coast down the Crosby driveway on their sleds. When they reached the sidewalk, they would turn their sleds into the

banking of snow that was about two feet high on the outer edge of the sidewalk, or go along the sidewalk itself and stop without going into the street. At times they coasted along the slope of the lawn, crossing the driveway, but did not go into the street. Just before the injuries were sustained, the plaintiff's intestate was on the terrace near the house lying on her stomach on a sled, which was the position used in coasting. She and the sled were facing in the direction of the street in a line that would traverse the driveway. One of the boys who was standing behind the sled stooped down and pushed the plaintiff's intestate on the sled, and she started down the hill with her feet dragging in the snow all the way down, "but the sled continued on across the driveway and out across the sidewalk into the street [at a point about five feet east of the driveway] and was struck by the right rear wheel of the defendant Carlson's taxi." The plaintiff's intestate's sister, who, at the time the sled was pushed, was seated "partially up the slope on the lawn," testified that the boy had not pushed her sister before this, nor had he "given her a shove," and that she did not hear her ask him to "shove her."

Orris Street was "very icy and very slippery" at the time, and Carlson's taxicab was travelling at the rate of about twenty miles an hour. There was evidence from the operator of a truck that the taxicab passed him when he was about fifty yards from the corner of Sears Avenue, which is about one hundred seventy-five feet from the easterly line of the driveway, and that when he was about fifteen or twenty feet west of Sears Avenue, after the taxicab had passed him, he saw two children, one with a sled, standing at the "bottom of the hill" at the entrance to the Crosby driveway, between the sidewalk and the gutter. He observed no change of speed of the taxicab. He saw the plaintiff's intestate crossing the sidewalk into the street dragging her feet. The taxicab stopped about sixty feet to the east of the driveway, "headed into the left [northerly] curb."

The defendant Rose testified that he was travelling in an easterly direction on Orris Street, which is about twenty-five feet wide; that when he was about fifty or seventy-five

feet from the driveway, he saw two children standing at about its foot, but did not notice that they had any sled; that the road was slippery; and that he was slowing down, as he was approaching an intersecting street. The plan that was in evidence shows that there was a "cross road sign" on the southerly side of Orris Street, about twenty-seven feet from the easterly side of the driveway. Rose also testified that he had not seen any one coasting, but when he heard some one cry out, he immediately applied his brakes and turned to his left, and that he did not see the plaintiff's intestate until after he came to a stop.

The passenger in the taxicab testified that she noticed the road was very slippery and that she saw the plaintiff's intestate coasting in the gutter, facing "dead across the street," when the taxicab "came opposite the Crosby driveway." From her testimony it could have been found that the taxicab started to turn when its front was at the cross road sign, and that it "ended up with the front of it heading toward the left hand side of the street . . . Way over."

The only exceptions are to the denial of the defendant's motion for a directed verdict in each case. The jury found for the plaintiff in each case.

1. We are of opinion that the question whether Rose was negligent was for the jury. General Laws (Ter. Ed.) c. 90, § 17, provides, in part, that no person operating a motor vehicle on any way shall run at a rate of speed greater than is reasonable and proper, having regard to the traffic and the use of the way and the safety of the public. This section also contains provisions as to what shall constitute prima facie evidence of a rate of speed greater than is reasonable and proper, but it has been held that the rates of speed which constitute prima facie evidence afford no justification for proceeding at even a lesser rate, if to do so in the given case would be to proceed at a rate of speed that is not reasonable and proper, having regard to the traffic and the use of the way and the safety of the public. *Rasmussen* v. *Whipple,* 211 Mass. 546.

Although Rose testified that he did not see the children standing at the foot of the driveway until he was about

fifty or seventy-five feet away, the jury could have found from the testimony of the truck driver, who testified that he saw them, "one with a sled," when it could have been found that he was at least one hundred ninety feet from the driveway, that Rose could have seen them when he was that distance away. The jury was not required to accept Rose's testimony that he was travelling at a speed of less than fifteen miles an hour, and could have found that there was no change of speed until just before the plaintiff's intestate's injuries were sustained. The group of coasters consisted of the plaintiff's intestate, her sister, and three boys who were between the ages of five and seven. Three of this group and their positions are definitely accounted for, and the jury might well infer that the two children who were standing with a sled at the entrance to the driveway were the other two. It could have been found that when Rose applied his brakes and started to turn to his left, he was about thirty-two feet from the point where the plaintiff's intestate entered the street, and that when he stopped, he was about sixty feet from the driveway, "way over" on the northerly side of the street. From this evidence the jury might conclude that the rate of speed at which Rose was travelling was greater than was reasonable and proper. The rise to the west of the Crosby property, which had a street frontage of about one hundred twenty feet, interfered with the view "to a certain extent" of the Crosby lawn of the operator of a motor vehicle travelling east on Orris Street. The jury took a view, and the verdicts were returned on October 30, 1941. Photographs that are a part of the record serve to indicate what the jury could see on the view. (See *Keeney* v. *Ciborowski*, 304 Mass. 371, 372, 373.)

Rose testified that he did not see the plaintiff's intestate at all until after he came to a stop. The truck driver, however, saw her when she was crossing the sidewalk. On all the evidence, we think it was a question of fact for the jury whether Rose should have seen the plaintiff's intestate as she was proceeding down the lawn, and at a time when, if he had been travelling at a reasonable rate of speed, he could have stopped in time to have avoided the collision.

*Brown* v. *Daley,* 273 Mass. 432, 435.  *Conrad* v. *Mazman,* 287 Mass. 229, 233, 234.  *Towle* v. *Morin,* 295 Mass. 583. The case at bar is distinguishable from *West* v. *Medford,* 255 Mass. 266, *Foley* v. *Osgood,* 293 Mass. 280, 283, *McGrimley* v. *Jameson,* 297 Mass. 280, *Conte* v. *Mizzoni,* 298 Mass. 463, 465, *Lynch* v. *Krancer,* 302 Mass. 593, 595, and *Abrahams* v. *Rice,* 306 Mass. 24.

2. The defendants contend that the violation by the plaintiff's intestate of the ordinance prohibiting coasting precludes recovery.  As the defendants, in their answers, did not set up violation of law by the plaintiff's intestate as a defence, they are entitled to have such violation, if any, considered only in its bearing upon contributory negligence, which they did set up.  *Herman* v. *Sladofsky,* 301 Mass. 534, 538.  See *Gleason* v. *Mann, ante,* 420, 422.  In the case at bar we are of opinion that the jury could have found that the act of the plaintiff's intestate in coming down the slope of the lawn and into the street, from its very inception and during its entire course, was against her will and involuntary.  The defendants do not contend that there was any act of the plaintiff's intestate other than the coasting that contributed to her injuries.  We are of opinion that the case in this aspect is governed by *Towle* v. *Morin,* 295 Mass. 583, and that it was for the jury to determine whether the plaintiff's intestate was contributorily negligent.  See *Herman* v. *Sladofsky,* 301 Mass. 534, 538, 539.

*Exceptions overruled.*