GEORGE BUCKMAN, administrator, *vs.* McCARTHY FREIGHT SYSTEM, INC.

Norfolk.   November 7, 1946. — January 3, 1947.

Present: FIELD, C.J., LUMMUS, QUA, DOLAN, & SPALDING, JJ.

*Negligence*, Motor vehicle, Contributory.

A finding of negligence on the part of the operator of a large truck consisting of a tractor and trailer was warranted, and a ruling that a pedestrian was guilty of contributory negligence was not required, by evidence of the circumstances in which the pedestrian and the truck came in contact on a dark, rainy night when, after the truck had stopped at an intersection while the pedestrian, to the operator's knowledge, was crossing from the curb to the left of the truck toward it and was near it, the operator started the truck and turned to the left to enter the intersecting street.

TORT. Writ in the District Court of Western Norfolk dated April 24, 1942.

Upon removal to the Superior Court, the action was tried before *Baker*, J.

*A. Hurwitz*, for the plaintiff.

*H. S. Avery*, for the defendant.

DOLAN, J.   This action of tort is brought by the administrator of the estate of George F. Johnstone to recover for his conscious suffering and death [1] alleged to have been caused by the negligent operation of a motor trailer truck owned by the defendant and operated by its agent. The case comes before us on the plaintiff's exception to the

[1] G. L. (Ter. Ed.) c. 229, § 5, as amended by St. 1937, c. 406, § 3. See now St. 1946, c. 614, § 1, effective January 1, 1947.

action of the judge in allowing, at the close of the plaintiff's evidence, the motion of the defendant for a directed verdict in its favor.

The evidence in its aspect most favorable to the plaintiff would have warranted the jury in finding the following facts: On December 13, 1941, the defendant's agent was operating the trailer truck involved on Vassar Street in Cambridge. He was bound for Providence, Rhode Island. The trailer truck was made up of what is called a B. M. tractor and a Fruehauf trailer. It was thirty feet long and ten feet high. The bottom of the trailer truck was about three feet from the ground; the trailer body was "about 23 feet long and 7½ feet wide." The cab in front of the body was attached to the trailer by what is called a fifth wheel. The space between the cab and the trailer was about two feet. The width of the cab was about five feet. The operator's seat was in the left of the cab. At the time of the accident it was very dark and raining hard, and the windshield wiper of the vehicle was in operation. Proceeding along the right hand side of Vassar Street, the vehicle "got just over the crosswalk at the intersection of Vassar Street and Massachusetts Avenue," and the operator brought it to a stop at that point and remained there for five minutes waiting for a chance to turn left on Massachusetts Avenue "going in the direction of Boston." Before starting the truck ahead, he looked to his left and saw a man (the jury could have found that it was the intestate) standing on the edge of the sidewalk "on the edge of the roadway — right at the edge of the curb." He saw him standing there just before he started up. Before starting he looked again to his left and observed that the intestate had stepped off the curbstone and was walking across Vassar Street. He observed that he had come to a complete stop about three or four feet from him at the left side of the truck. The operator then started his truck, turning to the left, "headed toward Boston," and stopped when the "tractor" part of the trailer was up toward the car tracks on Massachusetts Avenue about three feet from the rail nearest the front of the tractor. The operator testified that, although he had

not felt any impact with the truck and did not know that the truck had come in contact with anybody, he descended therefrom, walked back toward the trailer which was still on Vassar Street, and saw the man lying there, the same man that he had first seen standing on the curb. The jury could also have found that the intestate was lying at the left side of the vehicle near the crossing at Vassar Street. The "rear wheels of the cab of the tractor were in back of . . . [his] head; and . . . [his] feet were stretched to the beginning of the truck itself." In answer to interrogatories the defendant stated that the "operator did not continue to watch the man after he first saw him." The operator testified that in reporting the accident at the police station he did state that the "man was going toward Cambridge, came from Boston, and walked into the side of my truck," but that he had been coached by "the police officer" to say that. The operator did not depart from his testimony at the trial that he did not see the intestate walk into the truck, and that he stopped his vehicle, left it after proceeding to turn to the left into Massachusetts Avenue, went back and saw the body, although he had not felt any impact with the truck and the truck was not out of order. There was evidence of conscious suffering by the intestate and of his death on December 22, 1941, as a result of the accident.

The sole contention of the defendant is that there was no evidence requiring the judge to submit to the jury the question of the operator's negligence, and that the judge was warranted in directing a verdict for the defendant. In support of this contention the defendant argues that the evidence "almost" compels the conclusion that the intestate would have walked into the truck even though it were standing still and that the accident was due solely to the inattention of the intestate. We do not concur in the above contention nor in the argument made in support of it. On the evidence the jury would have been warranted in finding that, although the operator of the vehicle knew that the intestate was crossing the street at the crossing within full view, while the vehicle was stopped, and that

the intestate was within four feet of its left hand side; and although at the time it was very dark and raining hard, the operator, without warning or continuing to watch the intestate, started the vehicle and turned toward the left, from which direction the intestate was crossing, and that as a result the intestate was struck by the vehicle. In these circumstances it is settled that the intestate had a right to expect that the operator would exercise a reasonable degree of care for his (the intestate's) safety. *Campbell* v. *Cairns*, 302 Mass. 584, 586, and cases cited. *Snow* v. *Boston Elevated Railway*, 303 Mass. 420, 423. *Hess* v. *Boston Elevated Railway*, 304 Mass. 535, 538. *DeFrancisco* v. *Heath*, 306 Mass. 527, 530. *Shea* v. *Butler*, 315 Mass. 523. This is not a case where the only conclusion permissible is that the intestate suddenly stepped from a place of safety into collision with the vehicle. See *Hess* v. *Boston Elevated Railway*, 304 Mass. 535, 538, and cases cited. The evidence in the present case was sufficient to warrant the jury in finding that the conscious suffering and death of the plaintiff's intestate were caused by the negligence of the defendant, and it could not have been ruled properly that the intestate was guilty of contributory negligence. See *Nolan* v. *Shea*, 312 Mass. 631, 634, and cases cited; *Campbell* v. *Ashler, ante*, 475.

*Exceptions sustained.*