BRIDGET M. CLEARY, administratrix, *vs.* JEAN ST. GEORGE.

Suffolk. November 5, 1956. — January 8, 1957.

Present: WILKINS, C.J., RONAN, COUNIHAN, WHITTEMORE, & CUTTER, JJ.

*Negligence,* Motor vehicle. *Evidence,* On cross-examination.

In an action against the operator of an automobile for causing the death
of a woman pedestrian struck by it when, as it was proceeding after
dark in the east bound lane of a street in a suburban residential neigh-
borhood against a steady stream of traffic in the west bound lane, she
attempted to cross the east bound lane from the operator's left to his
right at a point where there was no crosswalk or intersection, the
evidence did not warrant a finding that the speed of the defendant's
automobile at that point was over twenty-five miles an hour or that
such speed was excessive in the circumstances, or that the defendant
could have avoided the accident after he saw the woman or should
have seen her sooner, or that the headlights of the automobile were
inadequate or defective, or that there was any negligence on the part
of the defendant. [247–249]

At the trial of an action against the operator of an automobile involved
in an accident at night, there was on the record no error in the ex-
clusion upon cross-examination of the defendant of a question as to
the distance he could see with his headlights. [250]

TORT. Writ in the Superior Court dated January 30, 1953.
The action was tried before *Warner, J.*

*Alfred A. Albert,* for the plaintiff.

*Walter F. Henneberry,* for the defendant.

CUTTER, J. The declaration of the plaintiff, administra-
trix of the estate of Mary K. Howard, in this action of tort
is in two counts. The first alleges that the defendant negli-
gently caused her death. The second seeks recovery for
conscious suffering. The defendant filed a general denial
and alleged contributory negligence. The plaintiff excepted
to the trial judge's direction of a verdict for the defendant
on each count and to the exclusion of certain evidence
offered by her. The facts, stated most favorably to the
plaintiff, are summarized below.

On December 28, 1952, at about six o'clock in the evening, the defendant was driving his automobile east toward Boston on Washington Street, Wellesley, through a suburban residential neighborhood, a route well known to the defendant. It was dry, clear and dark. His left wheel was about a foot and a half to the right of the center line of Washington Street, which was twenty-seven feet wide at the point of the accident.

The defendant testified that he was following another vehicle at a distance of about a car length and a half, but was unable to describe this vehicle. A witness, who was driving an automobile about forty or fifty feet behind the defendant, noticed no other inbound vehicles except his own and the defendant's. This witness stated that the inbound line of traffic was moving at about twenty-five miles an hour. The defendant testified that his own speed was only twenty miles an hour.

It could have been found that the inbound traffic was light. There was a steady stream of outbound traffic coming west toward the defendant, with some headlights on low beam and some on high beam. At a point where there was no crosswalk, the defendant suddenly saw a woman about eight feet in front of his left headlight coming toward him from the left into the path of the automobile at an angle and moving toward the right hand side of the street. The woman was hit by the right front of the defendant's vehicle. The defendant's automobile was brought to a stop at a point on the right side of the road about ten to twelve feet from where the plaintiff's intestate's body lay.

The witness in the automobile behind the defendant first saw the woman (who was wearing dark clothes) almost on the middle strip of the road moving generally toward the right hand (south) side of the street "running" from in front of an outbound automobile, "directly from between cars," although he did not see her moving between automobiles. There were then five to seven automobiles in the outbound lane, the first about abreast of the witness and only two or three more automobiles to go by the woman in

the outbound traffic line, but there was an interval after the five to seven vehicles when it appeared to be open and free for anybody who wanted to cross the street. The defendant's automobile prevented this witness from seeing the actual contact. The defendant did not see the woman coming from between the outbound automobiles.

Although the defendant testified that he applied his brakes, there were no brake marks on the street after the accident. In answer to an interrogatory the defendant had stated that there was no time for him to apply his brakes. After the accident, a piece of the grille was observed to be broken on the right front of the defendant's automobile and there were dents, not described in detail, in the right front and the right top of its hood.

A witness testified that the deceased was "a very active woman" and "too quick in her ways." She did not wear glasses and was sixty-one years old.

1. The accident took place ninety feet from the nearest intersection, a side street which joins Washington Street, but does not cross it. There was no evidence that the defendant's view of this intersection was in any way obstructed, or that his speed at the time of the accident had continued for as much as one eighth of a mile (six hundred and sixty feet) other than that the traffic was uninterrupted from the time the defendant entered Washington Street five or six blocks west of where the accident took place. This evidence we interpret as meaning only that progress had not been stopped by traffic lights. We perceive no basis for any claim that there was prima facie evidence of negligence by virtue of G. L. (Ter. Ed.) c. 90, § 17, as appearing in St. 1948, c. 564, § 1. No evidence of special circumstances indicates that a speed of twenty-five miles an hour was excessive at this particular place.

The testimony of the motorist following the defendant that the inbound line of traffic was moving at a rate of twenty-five miles an hour can be construed as evidence that this was the defendant's speed. There was no evidence that the defendant was travelling faster than this unless such

evidence exists because (a) the front of the defendant's automobile was damaged; (b) the plaintiff's intestate "was virtually dead in the gutter after the contact"; or (c) the defendant's automobile was stopped some twenty-five to twenty-eight feet from the point of contact with the intestate.

Where the character of injury to a person or to an automobile is shown in detail and is such that it indicates an unreasonable speed, this court in appropriate circumstances has regarded the injury or damage, taken in connection with other facts, as evidence of speed which could be found to constitute negligence. See *Mitchell* v. *Silverstein*, 320 Mass. 524, 526–527 (where the damage to the defendant's automobile and a pedestrian's injuries were regarded as warranting a finding of negligence, when a taxicab hit the pedestrian on a street where no other traffic was moving, in uncertain light and under wartime "dim-out" conditions. The evidence of physical injury in that case was used principally to show that the injured person could have been standing, and hence visible to a careful driver, instead of lying on the ground as the defendant there testified). See also *Smith* v. *Hogan*, 282 Mass. 573, 574 (finding of negligence held warranted by severe injuries to the plaintiff's intestate and to the defendant's automobile together with evidence that, where there was reasonable light and no other traffic, the automobile came to a stop only after travelling more than seventy feet). Compare *Barow* v. *Modoono*, 325 Mass. 522, 524.

In the present case, no evidence suggests that the injuries to the plaintiff's intestate and the defendant's automobile would not have been caused if the defendant's automobile had been proceeding at a rate of twenty-five miles an hour or less, nor was there evidence that stopping in twenty-five to twenty-eight feet, under the circumstances here present, indicated a speed higher than twenty-five miles an hour. The absence of skid marks on the road surface would be consistent with a reasonable speed. We see in the record no evidence from which the jury could reasonably find the

defendant's speed to have been excessive at a point where there was no intersection and no crosswalk. See *Ristuccia* v. *Boston Elevated Railway*, 283 Mass. 529, 532.

If there was no opportunity to see the injured woman for more than an instant before contact, failure to apply brakes seasonably would not be evidence of negligence. *Lovett* v. *Scott*, 232 Mass. 541, 542. *Abrahams* v. *Rice*, 306 Mass. 24, and cases cited. *Rose* v. *Silveira*, 318 Mass. 709, 711. See *Mroczek* v. *Craig*, 312 Mass. 236, 237. Compare *Walsh* v. *Gillis*, 276 Mass. 93, 96–97; *Carbonneau* v. *Cavanaugh*, 290 Mass. 139, 141; *McGovern* v. *Thomas*, 317 Mass. 740, 744; *DeLeo* v. *Jefferson*, 331 Mass. 317; *Catanese* v. *MacEntee*, 333 Mass. 132, 134–135. If the evidence of the deceased's movements just before the accident was believed, there is nothing to show that the defendant had any reasonable opportunity, after he saw the deceased, to avoid the accident or that he should have seen her earlier. *Rose* v. *Silveira*, 318 Mass. 709, 711, and cases cited. Compare *Shoobridge* v. *Callahan*, 310 Mass. 632. If any substantial portions of this testimony are disbelieved, there is a complete absence of evidence (see *LeBlanc* v. *Atlantic Building & Supply Co. Inc.* 323 Mass. 702, 706) of the intestate's movements before the accident. To say that the decedent, from the time she was first seen by the defendant, could not have moved far enough across the street to be struck by the right side of the defendant's automobile, and that, therefore, she must have been seen a greater distance than the defendant testified, would involve sheer conjecture. *Woods* v. *DeMont*, 322 Mass. 233, 235.

The nearest street light shown to exist was about ninety feet away on the opposite (north) side of the street. The defendant testified that his headlights were able to pick up the next automobile in front of him (which he described as fifteen to twenty feet distant) and, if it had not been there, would have picked up objects "further than that." We perceive no testimony on the basis of which the jury would have been warranted in finding that the defendant was negligent because his headlights were inadequate or defective.

2. The plaintiff excepted to the trial judge's exclusion of a question, "Under ordinary conditions at six o'clock on the night of December 28, 1952, with the headlights that you had for what distance could you pick up objects that were in front of you?" In view of the extent to which the matter of lights had already been covered on cross-examination this question could have been excluded by the trial judge as unduly repetitive. *Davis* v. *Hotels Statler Co. Inc.* 327 Mass. 28, 30. *McElwain* v. *Capotosto*, 332 Mass. 1, 3. If this question was intended as an inquiry whether the defendant's headlights were in good working order, it was by no means clear that this was its purpose. A more clearly expressed question about the condition of the defendant's headlights, if not reasonably regarded as repetitive in view of the defendant's earlier answers, might have been admitted. Even if the defendant had answered the excluded question in a way that showed his headlights would not reach to any greater distance, there is nothing which would show that any inadequacy of headlights in fact contributed to the accident. See *Lockling* v. *Wiswell*, 318 Mass. 160, 164–165. The exclusion of questions to the defendant about his knowledge of statutory requirements about headlights could have been regarded as relating to a collateral matter. *Glass* v. *Metropolitan Life Ins. Co.* 258 Mass. 127, 131.

Other exceptions to the exclusion of evidence involved cross-examination objectionable in form as assuming circumstances not warranted by the evidence (see *Reardon* v. *Boston Elevated Railway*, 311 Mass. 228, 231); questions about probable inconsistencies between the defendant's testimony and his answers to interrogatories, as to which it was for the trial judge to decide how far cross-examination would be helpful (see *Commonwealth* v. *Makarewicz*, 333 Mass. 575, 593–594); questions calling for answers indirectly admitting hearsay in objectionable form; or questions relating to matters not relevant. The trial judge dealt with all these questions in a manner well within the range of his discretion.

3. In view of the position which we take that there was

no evidence which would warrant a finding of negligence on the part of the defendant, there is no occasion to consider (a) whether, on the count for conscious suffering, the plaintiff sustained the burden of proof that the deceased was conscious at all after the contact with the defendant's automobile (see *Melnik* v. *Perwak,* 295 Mass. 512, 513–514; compare *Alden* v. *Norwood Arena, Inc.* 332 Mass. 267, 273–274) or (b) whether the deceased was shown, as matter of law (see *Salvato* v. *DiSilva Transportation Co. Inc.* 329 Mass. 305, 310–312), to have failed to exercise due care.

*Exceptions overruled.*