JOSEPHINE AMBROSE, administratrix, *vs.* BOSTON ELEVATED RAILWAY COMPANY.

SAME *vs.* RUBIN STEARNS.

Suffolk.    April 10, 1941. — May 28, 1941.

Present: FIELD, C.J., LUMMUS, QUA, DOLAN, & COX, JJ.

*Negligence,* Contributory, In use of way.

On evidence not fully disclosing the conduct of a pedestrian struck and killed by a rapidly moving street car while at night he was crossing car tracks located at the side of a public way adjacent to a public park, it could not properly have been ruled that he had been guilty of contributory negligence.

TWO ACTIONS OF TORT.  Writs in the Superior Court dated October 28, 1937 and January 13, 1938, respectively.

At the trial before *Sheehan,* J., there were verdicts for the plaintiff which, after remittiturs, were in the sum of $4,002.18.  The defendants alleged exceptions.

*S. P. Sears,* (*R. Maguire* with him,) for the defendants.

*Lee M. Friedman,* (*F. L. Kozol & J. Schneider* with him,) for the plaintiff.

DOLAN, J.  These are two actions of tort to recover for the death of the plaintiff's intestate, her husband, which resulted from his having been struck by a street car of the defendant company while it was being operated by its

servant, the defendant Stearns. At the close of the evidence each defendant filed a motion for a directed verdict. In each case the judge denied the motion and the defendant duly excepted. The jury returned a verdict for the plaintiff in each case. The exceptions of the defendants to the denials of the motions for directed verdicts bring the cases before us. The sole contention of the defendants is that as matter of law the intestate was not in the exercise of due care at the time of the accident.

The evidence would warrant the jury in finding the following facts: The accident occurred on November 30, 1936, at 5:02 P.M. On that day and before 5 P.M. the plaintiff and the intestate, accompanied by their youngest son, had driven in an automobile to a doctor's office located in an apartment building on Seaver Street between Blue Hill Avenue and Maple Street in Roxbury. The plaintiff entered the building with her son, and the intestate, at that time, remained seated in the automobile which was on the northerly side of Seaver Street.

The accident occurred on Seaver Street near the intersection of Maple Street. Seaver Street is a public highway running east and west between Egleston Square and Blue Hill Avenue. Its full width is ninety-five feet. Franklin Park runs along the southerly side of the street. The street car tracks are located on that side of the street about forty feet from the northerly curb of the street. They are standard gauge, four feet, eight and one half inches wide. The space between the outbound and inbound tracks is five feet; the distance from one outside rail to the other outside rail being fourteen feet, five inches. "These are raised rails, steam road construction, crushed stone bed, rails exposed." The location of the tracks was not an established "reservation" under St. 1894, c. 324. Compare *Herman* v. *Boston Elevated Railway*, 275 Mass. 485, 486, 487, and cases cited; *Pritchard* v. *Boston Elevated Railway*, 296 Mass. 197, 200. Seaver Street for its full width is "all a public highway." There is no fence or other construction that separates the park from the tracks, and there are no buildings of any kind immediately near the tracks at the park as one approaches

Maple Street. Opposite Maple Street (as shown by a plan in evidence) are two loading platforms, each about one hundred feet long and ten feet wide, one beside the outbound track and the other beside the inbound track. On each of these platforms is a pole marked with an orange and white band for "passenger stops." Leading from the outbound platform there is a well defined path to Franklin Park. It is the only path to the park shown on the plan, which covers the trackage of the railway on Seaver Street for a distance of over six hundred feet. On the inbound loading platform there is an arc light.

Just before the accident happened the operator of the car was "travelling up Seaver Street" on the inbound track toward Maple Street at a speed of thirty to thirty-five miles an hour in violation of the ordinances of the city of Boston which prescribe a rate of speed for street cars on certain public highways of not exceeding twelve miles an hour, and on all others of not exceeding fifteen miles an hour. The operator "had no idea it was a public way." He was familiar with the location. It was dark but there was no fog. The operator was wearing glasses "to relieve strain." He could not see the posts on Seaver Street, but he could see the road bed about twenty-five to thirty feet ahead. Approaching Maple Street opposite which the loading platforms were located, he slowed down when about one hundred or two hundred feet from the point of the accident and then increased the speed of the car to thirty or thirty-five miles an hour at which rate it was proceeding when the intestate was struck. An arc light about two hundred feet to the east of the loading platforms was out on the night of the accident and for "months before that." The head lamp on the car was lighted. It "shines about twenty to twenty-five feet ahead." There "was automobile traffic on Seaver Street that night and the headlights of the automobiles were lit."

The operator testified that he first saw the intestate when he was about twenty-five feet ahead of him. "He was walking; just stepping out of the inner rail of the inbound track. He seemed to be walking ordinary, like in

a crouch, at an average normal gait.  He might have taken about three steps before the . . . car struck him.  He was then beyond the outer rail, between the rails of the inner-bound tracks and a little to the right.  He was more to the front of the right end of the car.  When the car struck him it threw him out towards the street. . . . From the point . . . [the operator] first saw him to the point of contact he moved seven to ten feet, without change in his direction or in the speed or gait or manner of walking. . . ."  There was evidence, however, from which the jury could find that the operator did not see the intestate until he was struck by the car.  The jury could also find that the car came to a stop after the intestate was struck about opposite Maple Street, which was approximately seventy to one hundred feet from the point of collision, and that the body of the intestate was lying about thirty-five to forty feet from Maple Street either upon or "pretty close to the loading platform."

The burden was on the defendants to prove that the intestate was guilty of contributory negligence.  The conduct of the deceased is not fully disclosed by the evidence, and where on all the facts more than one inference rationally may be drawn the question whether the burden of proof resting on a party has been sustained is one of fact and cannot be ruled as matter of law.  *Mercier* v. *Union Street Railway,* 230 Mass. 397, 404.  *Duggan* v. *Bay State Street Railway,* 230 Mass. 370.  In the present cases there is nothing to show whether the lights from approaching automobiles blinded the intestate or otherwise confused him as he was crossing the street.  Whether he looked at the approaching car or, if he did, what he might have seen is left to conjecture.  As a pedestrian he had a right to be upon the public highway.  In view of the fact that his body was found upon or near the loading platform, upon which there was an arc light, the jury would be warranted in finding that he was carefully pursuing the safest route in crossing the street at or near that point.  From the fact that the car slowed down when one hundred to two hundred feet from the loading platform, the jury might infer properly that

if the intestate looked he saw the car slow down and continued to cross the track in proper reliance upon the expectation that the operator would take reasonable precautions for his safety under the traffic conditions existing at the time, and particularly when approaching a place set apart for admitting and discharging passengers.

The present cases are largely governed by *Hess* v. *Boston Elevated Railway*, 304 Mass. 535, and cases cited, and on the evidence, in its aspects most favorable to the plaintiff, we are of opinion that the judge could not have ruled properly that the intestate was not in the exercise of due care at the time of the accident and that in each case there was no error in the denial of the defendant's motion for a directed verdict.

The entry in each case will be

*Exceptions overruled.*