ANNA T. BAROW, administratrix, *vs.* ANTHONY P. MODOONO.

Middlesex. March 7, 1950. — March 29, 1950.

Present: QUA, C.J., LUMMUS, RONAN, WILKINS, & COUNIHAN, JJ.

*Negligence,* Motor vehicle, Violation of law. *Law of the Road. Proximate Cause.*

Evidence of the circumstances of a head on collision of two automobiles at night at about the middle of the road in a valley between two hills warranted a finding that the collision was caused by negligence of the operator of one of the automobiles in failing to see the other and in violating G. L. (Ter. Ed.) c. 89, § 1.

TORT. Writ in the Superior Court dated January 16, 1946.

The action was tried before *Giles,* J.

*P. J. Dolan,* for the defendant.

*R. S. Marsh,* (*V. C. Harnish* with him,) for the plaintiff.

WILKINS, J. On December 16, 1945, shortly after 2 A.M. automobiles operated by the plaintiff's intestate and by the defendant were in head on collision on Woburn Street, Lexington. In this action of tort there was a verdict for the plaintiff on a count for death. The defendant's exceptions are to the denial of his motions for a directed verdict and for the entry of a verdict under leave reserved.

The plaintiff's intestate died on the same day from his injuries. The defendant, who was badly injured, stated

after the accident, and testified at the trial, that he did not know how it happened. There was no other eyewitness of the actual collision. The defendant's entire argument is that there was no evidence of causal negligence on his part. See *Campbell* v. *Ashler*, 320 Mass. 475, 478. There is no question raised of the plaintiff's intestate's contributory negligence.

It was a very cold night. There was snow on the ground, but the road, lined by snow banks four feet high, was dry. The accident occurred in a valley. The front end of each automobile was demolished. The defendant, coming from Lexington, had driven down a hill and was about to ascend another hill toward Woburn. The front ends of the automobiles "were dead center on" about in the middle of the road, which at that point was twenty-four feet wide. From the right side of the defendant's automobile, which was between six and seven feet in width, to the snow bank on the right it was eight or nine feet, and from its left side to the snow bank on the left "there was at least as much, if not a foot or two more." These facts seem not in dispute.

A police officer testified that he learned of the accident at 2:10 A.M. and arrived at the scene "in a couple of minutes"; that he noticed no marks on the road; and that immediately after his arrival, an ambulance "pulled in" at the left of the Barow automobile.

The defendant testified that the accident happened at the bottom of the downgrade; that as he passed the top of the hill some people whom he knew were standing in conversation on the left; that he waved to them and from then on did not know what took place; that he did not see the Barow automobile at any time; that his speed when he passed the people was from twenty-five to thirty-five miles an hour; that his home was about five or six minutes' walk from where the accident occurred in the direction of Woburn; that at the top of the hill where he saw the people he could see not quite half way to the top of the other hill nearer his house; that from the top of the hill down which he came, it was about three to four hundred feet to the scene of the

accident, and at the scene one could see partly up the hill toward his house; that he "could see some distance beyond the accident"; that he did not apply his brakes at any time; and that his headlights were lighted. There was evidence that the distance from the scene of the accident to the top of the other hill was two hundred fifty feet, and that there was a curve in that part of the road. From photographs in evidence it would appear that the curve was nearer to the top of the hill than to the foot.

There was no evidence from which it could have been found that the accident occurred in a "thickly settled" district, where dwelling houses averaged less than two hundred feet between them for a distance of a quarter of a mile or over (G. L. [Ter. Ed.] c. 90, § 1), or that the defendant had operated his automobile for a quarter of a mile at a speed exceeding thirty miles an hour, then the rate made prima facie unreasonable outside such a district. See G. L. (Ter. Ed.) c. 90, § 17. See now St. 1948, c. 564, § 1.

The defendant at no time saw the Barow automobile, which, on the evidence, may or may not have been moving. The jury could have accepted his testimony that when he was at the top of the hill, he could see not quite half way to the top of the other hill. This was enough to permit a finding that intervening objects were visible. If the Barow automobile was not moving, it was then standing in the valley not over four hundred feet distant. The jury could have found on that supposition that the Barow automobile should have been observed by the defendant, who should have taken appropriate precautions instead of proceeding, without applying his brakes, into head on collision at a rate of speed sufficient to make junk out of the front ends of both automobiles. *Stone* v. *Mullen*, 257 Mass. 344. *Woolner* v. *Perry*, 265 Mass. 74, 77. *Ouillette* v. *Sheerin*, 297 Mass. 536, 539. *Nash* v. *Heald*, 306 Mass. 518, 520. *Lucier* v. *Norcross*, 310 Mass. 213, 216. *Cerez* v. *Webber*, 318 Mass. 703, 704.

If the Barow automobile was in motion, the jury could have found on that supposition that there was a violation of

G. L. (Ter. Ed.) c. 89, § 1, which reads, "When persons traveling with vehicles meet on a way, each shall seasonably drive his vehicle to the right of the middle of the traveled part of such way, so that the vehicles may pass without interference," and for violation of which a penalty is provided in § 5, as amended by St. 1936, c. 49. Whether there was a violation of the statute and whether a violation was a cause or an attendant circumstance of the accident were questions of fact. *Patrican* v. *Garvey*, 287 Mass. 62, 64. *Nicoli* v. *Berglund*, 293 Mass. 426, 428. *Butler* v. *Curran*, 302 Mass. 1, 3–4. *Kerr* v. *Deveau*, 311 Mass. 210, 213. *Hubbard* v. *Conti*, 321 Mass. 743, 745. There was evidence warranting a finding that there was room for the defendant to pass to the right of the Barow automobile. From the defendant's testimony as to his range of vision both at the top of the hill and at the scene of the accident, in the light of the evidence, including the photographs of the road, it could have been found that before colliding the defendant should have seen the Barow automobile and "seasonably" have driven to the right. This is not a case where there is nothing in the record to permit that conclusion. See *Whalen* v. *Mutrie*, 247 Mass. 316, 318; *Luvera* v. *DeCaro*, 317 Mass. 222, 224. More appears than in *Rogers* v. *Dalton*, 298 Mass. 146, *Tamagno* v. *Conley*, 322 Mass. 218, and similar cases cited by the defendant.

*Exceptions overruled.*