BARBARA N. HERWITZ, executrix, *vs.* MASSACHUSETTS BAY
TRANSPORTATION AUTHORITY & another.

Middlesex. December 6, 1967. — February 5, 1968.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, SPIEGEL, &
REARDON, JJ.

*Negligence*, Street railway: pedestrian; Contributory. *Evidence*, Photo-
graph, Of culpability. *Practice, Civil,* Exceptions: whether error
harmful; New trial. *Error,* Whether error harmful.

Evidence in an action warranted a finding of negligence on the part of
the operator of a streetcar toward a pedestrian whom the operator
did not see crossing the track on a clear night until the car struck
and killed him after the operator, with a clear view and with lights on
the car illuminating the track ahead and to the sides, had so acceler-
ated the car from a distance of seventy-four feet that it traveled up to
forty-two feet after striking the pedestrian [597–598]; and the evidence
did not require a finding of contributory negligence on the part of
the pedestrian, who could have observed the car when it had slowed
on approaching a crossover switch some distance away and have
concluded that he could cross the track safely [598].

At the trial of an action of tort under G. L. c. 229, § 2, as amended by
St. 1962, c. 306, § 1, by the executrix of a decedent concededly struck
and killed by a streetcar of a defendant transportation authority
operated by an individual defendant, its employee, it was error to
permit the plaintiff to show to the jury gruesome photographic slides
of the decedent's mutilated and disfigured body "solely on the basis"
of the degree of culpability of the defendants; and, where a verdict
in nearly the maximum amount specified in the statute was returned
against each defendant, it could not be said that the error was not
prejudicial, and the defendants were entitled to a new trial on the
issue of damages only. [598, 600]

TORT. Writ in the Superior Court dated May 15, 1963.
The action was tried before *DeSaulnier,* J.

*James Charles Roy* for the defendants.

*Joseph J. Hurley* (*Thomas E. Cargill, Jr.,* with him) for
the plaintiff.

SPALDING, J. About 9 P.M. on March 23, 1963, Carl
Herwitz (decedent) was struck and killed by a streetcar,

operated by one Townsend, of the MTA (Authority), now Massachusetts Bay Transportation Authority.[1] This action of tort was brought by the decedent's executrix against Townsend and the Authority to recover for the death and conscious suffering of the decedent. At the close of the evidence the counts for conscious suffering were waived. Initially the case was tried to an auditor (findings not final) who found for the plaintiff on both death counts. Thereafter the case was tried to a jury on the auditor's report and other evidence. Verdicts were returned for the plaintiff against each defendant on the counts for death. The case is here on the defendants' exceptions to the denial of their motion for directed verdicts on the death counts, to rulings on evidence, and to the denial of their motion for a new trial.

We summarize the evidence most favorable to the plaintiff as follows: The streetcar which struck the decedent was proceeding inbound on the Commonwealth Avenue reservation, so called, in the vicinity of Packard Corner in the Allston district of Boston.[2] The reservation, on which inbound and outbound tracks are located, is in the center of Commonwealth Avenue and is thirty-five feet wide. The tracks run east and west. The outbound tracks are on the north and the inbound tracks are on the south. The distance between the northerly rail of the outbound track and the northerly rail of the inbound track is about thirteen feet. On the reservation there is a crossing at Naples Road which was discontinued for vehicular traffic. It consists of two asphalt paths six feet wide, with crushed stone filling the area, twenty-three feet in width, between the paths.

The accident occurred near the Naples Road crossing at a point just west of pole 197/73. The night was clear and the rails were dry. The car was forty-five to forty-seven feet long, equipped with a bell and with air brakes capable

---

[1] It is not disputed that Townsend was an employee of the Authority acting within the scope of employment or that the decedent died from injuries sustained in the accident.

[2] It does not appear that this is an established reservation within the meaning of St. 1894, c. 324. See *Herman* v. *Boston Elev. Ry.* 275 Mass. 485, 487.

of making a nonemergency stop at a speed of ten miles an hour in a distance of twenty to twenty-five feet. If an emergency stop were used, the distance would be shorter. The car also was equipped with a headlight which enabled the motorman to see objects thirty feet ahead. Some light (up to ten feet) was also extended on either side of the rails.

The accident was witnessed by Ralph Sullivan, who got off an outbound car with the decedent at the outbound loading platform. The westerly end of this platform is seventy-two feet from the easterly side of the Naples Road crossing. As Sullivan proceeded in a westerly direction to the crossing, the car from which he and the decedent had alighted passed him. While Sullivan stood at the easterly edge of the crossing, he observed a second outbound car. At this time, he saw the decedent, who wore a dark coat and hat, standing to the east of him.[3] As the rear of the streetcar passed the decedent, he started to cross the tracks. When this outbound car passed Sullivan and had reached the westerly side of the Naples Road crossing, he observed a third car (operated by the defendant Townsend) proceeding inbound. As the two cars passed each other, Sullivan heard a bell. The inbound car had slowed to about three miles an hour as it came to a crossover switch sixty-five feet to the west of the crossing. The car was proceeding about ten miles an hour as it passed the rear of the outbound car. It then accelerated and "went forward fast." Townsend testified that he had a clear view. Sullivan watched the car as it passed the Naples Road crossing. He then observed the decedent, who was at that time in the area known as the "dummy" between the inbound and outbound tracks, walking straight ahead and with measured steps but with his head "probably sort of down" until he was hit by the streetcar.

The decedent was struck at a point six to ten feet to the west of pole numbered 197/73. Townsend saw the decedent for the first time through the side window of his car at the

---

[3] The witness said he was twenty feet away. The plaintiff, invoking geometry, suggests that the distance was forty-three feet.

moment of impact. The decedent was hit by the left front corner of the car. Townsend then applied the emergency brakes. The impact threw the decedent forward and against the pole from which he rebounded under the car. The distance from the point where the witness Sullivan first saw the inbound car operated by Townsend at the Naples Road crossing to pole 197/73 is seventy-four feet. When the streetcar came to a stop after the accident, the rear end of the car was five to six feet west of the pole.[4]

1. The auditor concluded that Townsend was negligent and that his negligence was the cause of the accident. The plaintiff argues that this finding alone, because of the prima facie effect of the report (G. L. c. 221, § 56), was sufficient to take the case to the jury. The rule to the auditor required him to find the subsidiary facts on each issue and that these findings were to constitute the basis for his ultimate findings. The auditor appears to have based his ultimate finding, in part at least, on the following subsidiary finding: "Although . . . [the decedent] was clearly visible to Sullivan, a witness who had preceded . . . [him] alighting from the street car, and who was on the crossover at Naples Road, he was not seen by Townsend. Townsend first saw the face of . . . [the decedent] in front of the windshield of his trolley at the moment he collided with him." It by no means follows that, because Sullivan saw the decedent, Townsend should have seen him. We do not pause to determine whether, thus narrowly based, the auditor's ultimate finding has evidential value on the issue of Townsend's negligence. See *Cook* v. *Farm Serv. Stores, Inc.* 301 Mass. 564, 567. We are of opinion that the evidence, exclusive of the report, would in any event warrant a finding of negligence.

It could have been found that Townsend, with a clear view, accelerated his car for a distance of seventy-four feet from the west side of the Naples Road crossover to pole 197/73; that he did not see the decedent until the car hit him, although the headlight was on; and that the car

---

[4] Townsend's version was that a little over one half of the car length was east of the pole.

traveled up to forty-two feet after it struck the decedent. The night was clear and the car's light illuminated the tracks for a distance of thirty feet and to the sides for a distance of ten feet. Although the evidence of negligence is slight, we are of opinion that the jury could have found that Townsend was negligent in not observing the decedent or taking appropriate measures to stop before hitting him. See *Barow* v. *Modoono*, 325 Mass. 522, 524; *Ferguson* v. *Worth*, 326 Mass. 336, 338; *Carlson* v. *Palley*, 326 Mass. 449, 451.

2. The defendants also seek to support their motion for directed verdicts on the ground that the decedent was contributorily negligent as matter of law. This was an affirmative defence and it is rare that the burden of proving such a defence can be said to have been sustained as matter of law. This is not such a case. The only evidence as to the decedent's conduct immediately before and after he was struck is Sullivan's testimony that the decedent walked with measured steps and was struck while crossing the inbound tracks. Sullivan did not testify that the decedent started across the tracks without looking. The jury could have inferred that the decedent had observed Townsend's car, which had slowed down to about three miles an hour before it passed the outbound car at the crossover sixty-eight feet away, and had concluded that it was safe to cross.[5] See *Ambrose* v. *Boston Elev. Ry.* 309 Mass. 219, 221–222; *Shoobridge* v. *Callahan*, 310 Mass. 632, 633–634.

3. The medical examiner, Dr. Luongo, was called by the plaintiff. He had a projector and colored photographic slides of the body of the decedent which he had taken at the mortuary. Counsel for the plaintiff requested that he be permitted to show the slides. At a bench conference the defendants' counsel conceded that the death of the decedent was caused by a streetcar of the Authority operated by Townsend; and that he had no objection to Dr. Luongo

---

[5] We have not overlooked the fact that the auditor's ultimate finding was that the decedent was in the exercise of due care. While this finding might have sufficed to take the case to the jury, we prefer to rest our decision on the evidence apart from the finding.

stating what injuries were sustained by the decedent, but he objected to the showing of the slides. Counsel for the plaintiff stated that he was offering the slides "to show the extent of the injuries as bearing upon the degree of culpability of both defendants." Subject to the defendants' exception, Dr. Luongo was permitted to project three slides on the court room wall "solely on the basis" of the degree of culpability of the defendants. The slides, which are before us, showed injuries on the upper part of the body, the trunk, and upper part of the lower extremities; injuries to the back and lower extremities did not appear.

The admission of this evidence was error. If otherwise relevant, evidence which is unpleasant or even gruesome has been held to be admissible. The fact that such evidence may be of an inflammatory nature is outweighed by its probative value. *Horowitz* v. *Bokron*, 337 Mass. 739. *Commonwealth* v. *Lamoureux*, 348 Mass. 390, 392–393. *Commonwealth* v. *Stirling*, 351 Mass. 68, 72. Thus, the fact that the slides were gruesome would not render them inadmissible, if otherwise they had probative value. Moreover, from the very nature of the accident the jury were aware that the decedent had been severely crushed and mutilated. And this was also apparent from Dr. Luongo's description of the injuries and from the facts contained in the death certificate. The vice of the ruling admitting the slides was that they were received "solely on the basis" of the degree of the defendants' culpability. Thus the jury were permitted to assess culpability on the basis of the mutilation and disfigurement appearing on the decedent's body. But this had no probative value on the issue of culpability. Culpability is the equivalent of fault. Such fault as there was here was negligence and that occurred before the decedent was crushed by the car. The extent of the damage does not reflect the degree of culpability.

It cannot be said, as the plaintiff urges, that this evidence, in any event, was not prejudicial. The death statute, as it then read, permitted damages to be assessed with reference to the degree of culpability at not less than $3,000 nor more

than \$30,000. G. L. c. 229, § 2, as amended by St. 1962, c. 306, § 1.[6] It is apparent from the verdicts in the amount of \$27,000 (within \$3,000 of the maximum) that the jury found a high degree of culpability. It is not unlikely that the erroneous ruling with respect to the slides may have influenced the amount of the verdicts. The exception is sustained, but since this error affected only the issue of damages, the defendants are entitled to a new trial on this issue only. *Simmons* v. *Fish*, 210 Mass. 563, 564–569.

4. The defendants moved for a new trial on the grounds that the verdicts were (1) against the evidence and (2) against the weight of the evidence and (3) that the damages were excessive. The motion was denied subject to the defendants' exception. In view of our holding on the issue of damages there is no need to discuss the third ground. As to the first and second grounds we cannot say that the denial of the motion was an abuse of discretion amounting to an error of law. *Hartmann* v. *Boston Herald-Traveler Corp.* 323 Mass. 56, 60–61.

5. The exceptions are sustained and there is to be a new trial limited to the issue of damages.

*So ordered.*

---

[6] See now St. 1965, c. 683, § 1, where the minimum and maximum amounts are \$5,000 and \$50,000.