CHARLES A. SULLIVAN, administrator, *vs.* BOSTON AND MAINE RAILROAD.

Middlesex.    March 16, 1922. — June 29, 1922.

Present: RUGG, C.J., BRALEY, DE COURCY, CROSBY, & JENNEY, JJ.

*Negligence*, Contributory, Railroad, Causing death.

At the trial of an action against a railroad corporation for causing the death of a boy, there was evidence tending to show the following facts: The boy, who had been at a station of the defendant on business, came out with a bundle of newspapers, looked up and down the defendant's double tracks, and then proceeded to cross them. On the track nearer him and at his right was a freight train, which was making considerable noise and which obscured his view for three or six hundred feet of the farther track, upon which came trains from Boston. There was a platform on either side of the double tracks and the planking between was twenty-three and one half by seventeen feet. As the boy proceeded, several persons crossed the planked walk ahead of him, the last one being not more than three or four feet in front, and "he went right over after they did." An employee of the defendant was standing on the platform beyond the farther track with a red flag in his hand "and was leaning on the flag, and continued to do so until the boy was in the path of the train or midway between the two outbound rails on which" an express train from Boston was approaching, when he started shouting to the boy. The boy then seemed to become very scared and tried to spring clear, but could not and was struck and killed by the express train. No bell nor whistle was sounded on the engine. An announcing bell at the station did not ring as the train approached. The speed of the train was between forty-five and fifty miles an hour. *Held*, that

(1) There was evidence of negligence of the defendant;

(2) There was evidence warranting a finding that the boy was in the exercise of due care;

(3) It could not properly have been ruled that, if the jury found that the boy did not look at any time after going out of the station building to see whether or not a train was approaching from Boston, there could be no recovery;

(4) In the circumstances, the following instruction in the charge to the jury was not erroneous: ". . . generally speaking a person who approaches a crossing is bound to make reasonable use of his faculties of sight and hearing to guard against getting injured at that place. What reasonable use may mean, to what extent he ought to go in looking and listening, depends upon the circumstances of the case. He must make reasonable use of his senses unless he is fairly justified in not doing so."

TORT for the causing of the death of the plaintiff, not an employee or passenger of the defendant, through negligence of the defendant or negligence or unfitness of its servants or agents. Writ dated September 18, 1920.

In the Superior Court the action was tried before *Hammond*, J. Material evidence is described in the opinion. At the close of the evidence the defendant moved that a verdict be ordered in its favor. The motion was denied. It then asked for the following rulings:

"7. The defendant's only duty to the plaintiff's intestate was to give him reasonable warning of the manner in which it was operating its express and freight trains in front of the Reading Station at the time of the accident.

"8. If the defendant gave the plaintiff's intestate reasonable warning of the manner in which the express train was about to pass the standing freight train in front of the Reading Station, it owed to the plaintiff's intestate no further duty of operating said train in any other or different manner.

"9. If the jury find that the plaintiff's intestate did not look at any time after going out of the station building to see whether or not a train was approaching from Boston the plaintiff cannot recover."

"12. If the jury find that the plaintiff's intestate did not look to see whether or not the train was approaching on the Portland bound track after he had passed the freight engine and was in a position to see what was approaching on this track, the plaintiff cannot recover.

"13. If the jury find that the plaintiff's intestate did look after he had passed by the front of the freight engine and was in a posi-

tion to have seen it as it approached on the Portland bound track the plaintiff cannot recover."

"15. There is no evidence that would warrant the jury in finding that the plaintiff's intestate relied upon the actions of the flagman of the freight train as an assurance that it was safe for him to cross the track in front of the express train.

"16. There is not sufficient evidence to warrant the jury in finding that the plaintiff's intestate relied on the fact that the bell on the station building was not ringing as an assurance that there was no danger in crossing at the time he did."

The rulings were refused. Material portions of the charge to the jury are described in the opinion. The jury found for the plaintiff in the sum of $4,500; and the defendant alleged exceptions.

*J. M. O'Donoghue,* for the defendant.

*W. P. Lombard,* (*A. H. Reed* with him,) for the plaintiff.

CROSBY, J. This is an action of tort brought by the administrator of the estate of John F. Sullivan, a boy about twelve years and five months old (hereinafter referred to as the plaintiff), who was killed in front of the defendant's railroad station in Reading in this Commonwealth by a train of the defendant about 5:20 o'clock in the afternoon of April 6, 1920. The station building was located next to the Boston bound track of the main line between Boston and Portland. There was a platform in front of the station, and another on the opposite side of the tracks, which were used by passengers in boarding and alighting from trains. The planked space between the platforms was twenty-three and one half by seventeen feet. At the time of the accident a freight train was standing on the Boston bound track headed toward Portland with the cow-catcher of its engine overlapping the Boston edge of the planking. The plaintiff, who had been at the station to get a bundle of newspapers addressed to him, came out of the door of the men's waiting room, crossed the platform and track in front of the engine of the standing freight train, and was struck and killed by an express train on the outbound track. There were six or seven freight cars attached to the freight engine and this train obscured the view of the plaintiff when he came out of the station so as to conceal anything on the Portland bound track from the place where he started to cross to a point five or six hundred feet toward Boston.

While the evidence was conflicting, the jury could have found that, when the plaintiff came out of the station with a bundle of newspapers, he "looked up and down" in the direction of Boston and then of Portland before starting to walk across the track; that at that time an employee of the defendant was standing on the Portland bound platform opposite the plank walk with a red flag in his hand "and was leaning on the flag, and continued to do so 'until the boy was in the path of the train' or midway between the two outbound rails on which the express train was travelling; that the flagman started shouting to the boy; that the boy then seemed to become very scared and tried to spring clear, but couldn't" and was struck and killed by the express train; that no bell nor whistle was sounded on the engine; that the train was travelling at a speed of between forty-five and fifty miles an hour; that the announcing bell at the station did not ring as the train approached; and that the freight engine was making considerable noise.

There was evidence from which it could have been found that the defendant was negligent, and we do not understand it to contend the contrary; but, it is argued, there was no evidence which would warrant a finding that the deceased was in the exercise of due care, and for this reason the defendant's motion that a verdict be directed in its favor should have been granted, and its ninth, twelfth and thirteenth requests for instructions should have been given.

St. 1906, c. 463, Part II, § 147 (see now G. L. c. 160, § 138), requiring signals to be given, is not applicable to the case at bar as the railroad at the place of the accident did not cross a public way; the burden rested on the defendant to show that the plaintiff was not in the exercise of due care. St. 1914, c. 553. Upon this question the presiding judge instructed the jury in part as follows: "Now, a railroad crossing, a place where persons cross the track of a railroad, is plainly a dangerous place, and generally speaking a person who approaches a crossing is bound to make reasonable use of his faculties of sight and hearing to guard against getting injured at that place. What reasonable use may mean, to what extent he ought to go in looking and listening, depends upon the circumstances of the case. He must make reasonable use of his senses unless he is fairly justified in not doing

so. . . . Was he [the plaintiff] justified under the circumstances in supposing that the coast was clear and that it was safe for him to go across just before he started to cross and before he saw the engine? That is to say, was he absolved from the duty of making use of his senses by any other circumstances? Was there anything in the attitude of the employee of the freight train who had the flag which would indicate to him that it was safe for him to cross? Or was there anything in any other respect, the fact that no bell was ringing, that would indicate to him that it was safe to cross."

These instructions were inconsistent with the defendant's ninth request that "if the jury find that the plaintiff's intestate did not look at any time after going out of the station building to see whether or not a train was approaching from Boston the plaintiff cannot recover."

A railroad crossing is universally recognized as a place of danger and a person approaching one is bound to exercise ordinary care and prudence for his safety. Generally he must look and listen in such a manner as will enable him to see or hear an approaching train if one is within the range of his sight or hearing. But there is no absolute requirement of law which obliges him in any event to stop, look, and listen. There may be circumstances which will excuse him from looking and listening. *Clark* v. *Boston & Maine Railroad*, 164 Mass. 434. *Fitzhugh* v. *Boston & Maine Railroad*, 195 Mass. 202, 204.

Although he cannot be found to be in the exercise of due care if he fails to use reasonable diligence to ascertain whether he can safely cross a railroad track, he may rely to a certain extent upon the acts and conduct of the employees of the railroad, in deciding whether in the exercise of reasonable precaution he can without danger pass over. The evidence that when the plaintiff came out of the station with his bundle of papers he looked up and down the track; that his view in the direction from which the express train came was wholly obstructed for a distance of five or six hundred feet; that the warning signal at the station was not ringing; that the freight engine was making considerable noise; that an employee of the defendant stood near the cross walk with a red flag in his hand on which he was leaning, but that he gave no warning of the approach of the train until the plaintiff was on the outbound track in front of the express train, warranted the jury in finding that the

plaintiff was in the exercise of reasonable care. *Warren* v. *Fitchburg Railroad*, 8 Allen, 227, 231. *Wheelock* v. *Boston & Albany Railroad*, 105 Mass. 203, 208. *Bayley* v. *Eastern Railroad*, 125 Mass. 62. *Johanson* v. *Boston & Maine Railroad*, 153 Mass. 57, 60. *Clark* v. *Boston & Maine Railroad, supra. Santore* v. *New York Central & Hudson River Railroad*, 203 Mass. 437, 441, 442. *Cuddy* v. *Boston Elevated Railway*, 208 Mass. 134. *Morrissey* v. *Boston & Maine Railroad*, 216 Mass. 5.

There was also evidence that several persons crossed the planked walk ahead of the plaintiff, that the last one was not more than three or four feet in front of him and that "he went right over after they did." This evidence had a bearing upon the question of the plaintiff's care. It follows from what has been said that the defendant's ninth request was rightly refused.

The defendant argues that the plaintiff was careless because when he had passed by the freight engine he did not look for an approaching train before going upon the outbound track. We are of opinion that this question was for the jury; the distance between the tracks was only about seven and one half feet and there was an overhang of the freight cars of one and one half to two feet; it was but a step or two for him to take after he passed the freight engine until he was on the outbound track and it could have been found that at that time he was relying to some extent on the flagman to warn him, that no warning was given, and that other persons were crossing on the walk a short distance ahead of him. For the reasons already stated it could not have been ruled that he was bound at that time to look in the direction of the train. Accordingly requests twelve and thirteen properly could not have been given.

The instruction that the plaintiff "must make reasonable use of his senses unless he is fairly justified in not doing so" was not erroneous. It is manifest that the judge referred to the senses of sight and hearing. The language used was equivalent to an instruction that the plaintiff was bound to have looked and listened unless in the circumstances he was excused therefrom by reason of the conduct of the flagman or from the fact that no bell was rung at the station or warning signal given from the engine of the rapidly approaching train. The instruction cannot properly be construed as a statement to the jury that the plaintiff was not

required to exercise his faculties and senses to protect himself from danger, but only that he was not necessarily careless because he did not look and listen for a train that might be approaching. *Chaffee* v. *Boston & Lowell Railroad,* 104 Mass. 108. *Hanks* v. *Boston & Albany Railroad,* 147 Mass. 495, 499.

It could not have been ruled in view of the evidence most favorable to the plaintiff that the defendant had sustained the burden of proving that the plaintiff was careless and that his conduct was not that of a reasonably careful and prudent boy of his age. All the cases relied on by the defendant are distinguishable in their facts from those in the present case.

As the defendant's motion that a verdict be directed in its favor was rightly denied, and as the only exceptions which have been argued cannot be sustained, the entry must be

*Exceptions overruled.*