HARRY F. LANE *vs.* BOSTON AND MAINE RAILROAD.

Worcester.     September 26, 1933. — October 29, 1934.

Present: CROSBY, PIERCE, FIELD, & DONAHUE, JJ.

*Negligence,* Gross, Railroad, Contributory, Violation of regulation, At grade crossing.  *Evidence,* Presumptions and burden of proof.

At the trial of an action against a railroad corporation under G. L. (Ter. Ed.) c. 160, § 232, the burden is on the defendant to prove that the plaintiff was guilty of gross negligence contributing to his injuries.

On all the evidence at the trial of an action against a railroad corporation for personal injuries sustained by the motorman of a street car when the car was struck by a train of the defendant at a place where the car tracks crossed the railroad tracks diagonally at grade, including evidence that the railroad gates at the crossing were not lowered before the collision; that no signal by whistle or bell was given from the engine of the train; that the plaintiff brought the car to a stop before going on the crossing; that he looked in both directions before going on the crossing, could see about one hundred fifty feet in the direction from which the train approached and neither saw nor heard the train; that he had started the car slowly over the crossing and it had crossed the first railroad tracks when his attention was attracted by a "clink" of the bell on the farther gate; that he then

saw the train, which had approached at an excessive speed from the same general direction as the car, twenty-five feet away on the farther railroad tracks; that he stopped the car as quickly as possible; and that the collision then occurred, it was *held*, that

(1) A finding was warranted that the defendant's employees were negligent;

(2) It could not properly have been ruled as a matter of law that the plaintiff was guilty of either negligence or gross negligence.

Certain testimony by the plaintiff at the trial above described warranted a finding that he complied with the requirements of a regulation of the department of public utilities concerning the approach of a street car to a grade crossing of a railroad; and therefore it could not properly have been ruled as a matter of law that the plaintiff was precluded from recovery by a violation of law consisting of his failure to comply with the regulation.

TORT. Writ dated January 14, 1929.

The action was tried in the Superior Court before *Donnelly*, J. Material evidence is stated in the opinion. There was a verdict for the plaintiff on each of the first and second counts in the sum of $2,638. The defendant alleged exceptions.

*A. S. Holton*, (*C. F. Gaskill* with him,) for the defendant.
*J. J. McGrail*, for the plaintiff.

CROSBY, J. This is an action of tort for personal injuries arising out of a collision between a train operated by the defendant and a one-man electric trolley car operated by the plaintiff, as motorman, on a grade crossing in Worcester, on September 18, 1928. The declaration was in three counts, the first, for injury to the plaintiff arising out of the negligence of the defendant's agents and servants, and the second, for injury by reason of the failure of those in charge of the defendant's train to give the statutory signals as required by G. L. (Ter. Ed.) c. 160, § 232. The third count was waived in open court and the case was submitted to the jury on the first and second counts. The defendant's answer was a general denial and plea of contributory negligence on the part of the plaintiff, and as to the second count that the gross negligence and violation of law on the part of the plaintiff contributed to his injury. The jury specifically found that the statutory signals were not given. The defendant does not contend that this

finding was not warranted. The defendant at the conclusion of the testimony filed three motions, one requesting the judge to direct a general verdict for the defendant, and the other two asking him to direct a verdict for the defendant on each of the first and second counts. The judge denied the motions, and the defendant excepted. The jury returned a verdict for the plaintiff on the first and second counts each in the sum of $2,638.

A plan and photographs of the vicinity where the accident occurred were offered by the defendant and marked as exhibits. The plaintiff testified that the photographs were accurate representations of what they purported to show if one were standing on the street where the camera was placed, except that the white post represented in them has since the accident been moved farther back from the crossing. Before the introduction of evidence the jury took a view of the scene of the accident from the ground, and from an electric trolley car of the same type as that operated by the plaintiff at the time of the accident, at the places where the plaintiff testified he made two stops before entering upon the crossing. A view was also taken by the jury for half a mile north of the crossing. The regulation of the department of public utilities as to the conduct of one-man trolley cars approaching a grade crossing, which was introduced and is later referred to, provides: "Upon approaching a railroad crossing at grade the operator of a street railway car operated by one man shall bring it to a stop at not less than 75 and not more than 125 feet from the crossing, for the purpose of making sure that the car is under control; then slowly advance the car to a point clear of the railroad track, where he shall again stop the car and ascertain if the way is clear before crossing." The contention of the defendant is that the judge should have directed a verdict for it on each count, and also generally, on the ground that the plaintiff was as matter of law guilty of negligence, gross negligence, and violation of law which contributed to his injury.

The evidence shows that on the day of the accident the plaintiff was operating a trolley car of the one-man type on

West Boylston Street at Barbers Crossing, going south. The car was of the vestibule type, without partitions between the vestibules and the body of the car. Windows with wooden sashes between them extended the length of the car on each side, and in front of each vestibule was a window, flanked by two side windows, extending the width of the car. The door of the front vestibule was opened by a lever operated by the operator, and was of the "contact" type, on which type of cars from the time the door is opened until it is closed the power is shut off. There were windows with wood and wire netting in each of the doors. The car was equipped with air brakes. West Boylston Street runs easterly of and adjacent to the railroad location for more than a mile, in a general north and south direction. The street railway tracks are on the westerly side of this street, easterly of the railroad tracks. Between the street car tracks and the railroad tracks there is a fence of wooden posts with woven wire attached thereto. The street curves gradually to the east as it continues in a northerly direction from the crossing. The railroad tracks have a gradual down grade from the Summit to the crossing. On either side of the crossing is a railroad gate the arms of which, when no train is passing, stand erect in the air, and upon the approach of a locomotive are lowered by a gate tender who operates them from near his shanty on the westerly side of the crossing.

The plaintiff testified that he was familiar with the regulation of the department of public utilities; that he made the first stop eighty-five feet north of the crossing and made sure that his car was under control; that he then went ahead to make the complete stop that the rule calls for, and stopped the car eight or nine feet from the gates and picked up two passengers; that after these passengers got on he stepped over, looked out toward the back of his car to see if anybody else was coming, then stepped back into his motorman's position and glanced out through the door and side windows on the right hand side; that he then closed the door and started the car; that after going two and a half or three feet he saw a man running across the railroad

tracks to get into his car; that he threw off the power, opened the door and the man got on; that he immediately closed the door; that when the door was closed the car was not so far as where the gates would be if they were down; that after closing the door he looked straight ahead for the gate and saw the gate tender standing away from the gate and looking south down the tracks; that at this time his car had gone under the gates and was just about to go over the first railroad track at a speed of possibly three or four miles an hour and coasting; that after letting the man on and before closing the door he had looked to the north; that when he had passed over the first track and was approaching the second he heard a clink from the bell on the opposite gate which was standing upright just tipped a little; that he then looked to the south to his left; that he then looked toward the door on his right and saw an engine twenty-five feet away from him; that when he heard the clink of the bell he gave a check on the air and gave the car two notches of power as a protectionary measure that motormen take in case of danger; that when he saw the engine he threw off the power to stop the car, which was all he could do; that he then was hit by the engine; that it was more of a sideswipe because the car was going diagonally over the crossing. He further testified that he heard no whistle nor bell from the engine or sound from the train up to the time he heard the clink on the gate, which was not as loud as a telephone bell ordinarily is and was the only bell he heard; that when he picked the man up he saw up the track to the north one hundred forty or one hundred fifty feet; that when he made the stop at the white pole he looked up and down the tracks; that the view to the south is blocked by the signal house so one cannot see very far down the tracks; that after starting onto the first track you have to look by the signal house.

On cross-examination he testified that he was not familiar with the train time schedules; that two passengers were at the white pole which was about twelve feet from the crossing; that his car was just starting into the curve at this time; that he looked out of his motorman's door to see

if any one else was coming, and then looked up the railroad to the north; that he had hold of an iron post in the doorway, leaned out and got a full view, that he could see up the tracks one hundred fifty feet; that he believed from this point you could see as much of the tracks through the side windows as in any other place; that he never looked out the back window of the car, that he never felt it necessary; that he did not know from the construction of his car that if he looked out of the back windows the railroad tracks could be seen for a long way; that the tracks could be seen quite well from the first window, and farther down the window casings are a barrier so that one can see very little out of the side windows; and that looking down through the car to the windows at the rear end the tracks could not be seen for a long distance. He further testified that he looked and listened for coming trains and for any noise which would be out of the ordinary; that he carefully listened for a bell and did all he could in his position in the car to observe whether a train was coming down beyond the crossing; that his car was running at a speed of three miles an hour and he brought it to a stop as soon as he could when he saw the train; that it could not have been done more quickly; that when he first saw the train his car was just about entering the second track and the bumper on the car was over the inbound rail.

G. L. (Ter. Ed.) c. 160, § 232, provides that where there is a failure to give the statutory signals and a person is injured in his person or property by collision with the engines or cars of a railroad corporation at a crossing at grade such person is not barred from recovery "unless it is shown that, in addition to a mere want of ordinary care, the person injured . . . was, at the time of the collision, guilty of gross or wilful negligence, or was acting in violation of the law, and that such gross or wilful negligence or unlawful act contributed to the injury." It was admitted by the defendant at the trial that the gates were up when the plaintiff's car approached and entered upon the crossing.

It is the contention of the defendant that as matter of law the plaintiff was guilty of gross negligence which contributed

to his injury; and that as matter of law the plaintiff was
guilty of contributory negligence even if the evidence did not
show gross negligence.   We are of opinion that neither of
these contentions can be sustained.

It could have been found from the testimony of the plain-
tiff and that of Abbie Pierce and one Londergan, witnesses
called by him, from the photographs in evidence, the plan,
and the view taken by the jury, that the plaintiff was not
guilty of gross negligence or even of contributory negligence,
but was in the exercise of reasonable care and diligence in
attempting to pass over the crossing.   The plaintiff could
rely to a certain extent upon the fact that the gates were up.
He was not justified in relying wholly upon that fact, but
was required to make a reasonable use of his faculties in
order to ascertain whether a train was approaching.   *Santore*
v. *New York Central & Hudson River Railroad*, 203 Mass.
437, 441.   *Slattery* v. *New York, New Haven & Hartford
Railroad*, 203 Mass. 453, 457.   The evidence warranted a
finding that before the plaintiff started to cross the track
he did not rely wholly upon the fact that the gates were up,
but that he looked to the north and south before attempting
to pass over the crossing, and neither saw nor heard the
approaching train.   He was bound to use the care and caution
of a reasonably prudent man in view of the existing circum-
stances.   *Labrecque* v. *Donham*, 236 Mass. 10, 15.   Upon the
entire evidence it was for the jury to determine whether the
engineer was negligent, and whether the plaintiff was negli-
gent or grossly negligent in attempting to pass over the
crossing in the circumstances.   *Sullivan* v. *Boston & Maine
Railroad*, 242 Mass. 188.

It is the contention of the defendant that the plaintiff
looked only when he knew he could get but a short view up
the tracks, and did not look through the rear windows or
from the street side of the car where he could have seen the
approaching train at least one thousand feet away if not
much farther.   The plaintiff testified that there were win-
dows with wood and wire netting in both the front and rear
doors; that he looked to the north from the open doorway
before closing the door after the passenger got on; that "If

one, instead of looking out the side windows which are blocked by the barriers, looks right down through the car to the windows at the other end, he could not see down the railroad a long distance. . . . One could see a long distance if one looked out the other end of the car." In view of this testimony and that of Abbie Pierce and Londergan, and the view taken by the jury on the ground, and from a car of the same type as that operated by the plaintiff at the time of the accident, it could not properly have been ruled that the plaintiff was guilty of any negligence which contributed to his injury.

It is the contention of the defendant that the plaintiff is precluded from recovery for failure to observe the regulation of the department of public utilities; that this was a violation of law which contributed to his injury. The plaintiff testified that he observed all the requirements of this regulation. If the jury believed his testimony they were warranted in finding that it had in all respects been complied with by the plaintiff. In addition to the admission of the defendant that the gates were up, and that the finding that the statutory signals were not given was warranted by the evidence, it could have been found that the speed of the train as it approached the crossing in the circumstances was excessive. It is plain that a finding that the defendant was negligent was amply warranted. The burden was upon the defendant to prove that the plaintiff was grossly negligent. *Brusseau* v. *New York, New Haven & Hartford Railroad*, 187 Mass. 84, 85. The facts in the case of *Lenihan* v. *Boston & Maine Railroad*, 260 Mass. 28, cited by the defendant, are plainly distinguishable from those which could have been found in the case at bar.

As the instructions of the trial judge are not included in the record, it is to be assumed that they were without error and fully protected the rights of both parties. A verdict could not properly have been directed for the defendant. It could have been found from the evidence that in the exercise of due care the plaintiff could not have seen the train or known of its approach before he started to cross the tracks. It could have been found that he was in the exercise of due

care, and that the defendant was negligent. *Hicks* v. *New York, New Haven & Hartford Railroad,* 164 Mass. 424. *McDonald* v. *New York Central & Hudson River Railroad,* 186 Mass. 474. *Lydon* v. *New York, New Haven & Hartford Railroad,* 235 Mass. 469. *Sullivan* v. *Boston & Maine Railroad,* 242 Mass. 188. *Engleman* v. *Boston & Maine Railroad,* 210 Mass. 179, and cases therein cited. *Morel* v. *New York, New Haven & Hartford Railroad,* 238 Mass. 392, 395.

It follows that the motions for a directed verdict could not properly have been allowed.

*Exceptions overruled.*