AMY WOODS & others[1] *vs.* ROGER O'NEIL & others.[2]

No. 00-P-232.

Hampden. February 12, 2002. - May 21, 2002.

Present: BECK, GILLERMAN, & KAFKER, JJ.

*Practice, Civil,* Summary judgment, Agreement for judgment. *Negligence,* Duty to prevent harm, Causation.

In a negligence action arising from injuries sustained by a teenage pedestrian when she was struck and injured by an automobile after a driver had stopped his vehicle, blocking the teenager's view of oncoming traffic, and signalled the teenager to proceed, the judge erred in concluding that summary judgment for the defendants (the driver and his employer) was appropriate where the defendants failed to demonstrate that the plaintiffs (the teenager and her parents) had no reasonable expectation of proving a breach of duty given the particular facts and the reasonable inferences that could be drawn from them, and where, on the issue of causation, the teenager's actions supported a rational inference of probabilities from established facts that she relied on the signal from the defendant driver before deciding to cross the road. [770-775].

In a tort action, the judge properly denied motions pursuant to Mass.R.Civ.P. 54(b) that were filed by the plaintiffs to ensure that one tortfeasor, who had entered a settlement, would be included as a defendant for the purpose of allocating percentage shares of negligence under G. L. c. 231, § 85; further, this court declined to rule on the status of the settling joint tortfeasor pursuant to § 85 as premature. [776-777]

CIVIL ACTION commenced in the Superior Court Department on February 27, 1996.

The case was heard by *C. Brian McDonald,* J., on a motion for summary judgment.

*Wendy H. Sibbison* for the plaintiffs.

*Pamela A. Smith (Frank A. Smith, III,* with her) for Roger O'Neil & another.

[1]Amy Woods's mother, Kay Woods, individually and as next friend, and Amy Woods's father, Gary Woods.

[2]New England Telephone and Telegraph Company and Jeffrey N. Felix. Felix has not participated in this appeal.

KAFKER, J. The plaintiffs appeal from a Superior Court judge's order allowing summary judgment in favor of the defendants Roger O'Neil and his employer, New England Telephone and Telegraph Company (NYNEX), in this tort action involving a pedestrian struck and gravely injured by an automobile. The issue presented is the legal effect of the defendant O'Neil's stopping his van and signaling the teenage pedestrian, the plaintiff Amy Woods, to proceed, as she stood on the double yellow line of a four lane road. She was thereafter struck by an automobile driven by Jeffrey Felix. The plaintiffs also appeal from the denial of various motions they filed to ensure that Felix, who settled, be included as a defendant for the purpose of allocating percentage shares of negligence under G. L. c. 231, § 85. We reverse the summary judgment and remand the case to the Superior Court for trial. We affirm the orders of a second Superior Court judge denying the plaintiffs' motions and decline to rule on the status of the settling joint tortfeasor pursuant to G. L. c. 231, § 85, as the question is premature.

1. *Facts.* "The standard of review of a grant of summary judgment is whether, viewing the evidence in the light most favorable to the nonmoving party, all material facts have been established and the moving party is entitled to judgment as a matter of law." *Miller* v. *Mooney*, 431 Mass. 57, 60 (2000). The facts in the light most favorable to the plaintiff are as follows. On February 6, 1996, Amy Woods (Woods), age fourteen, was struck at rush hour by a car driven by the defendant Felix, while she and Colleen Fettes attempted to cross Page Boulevard from south to north. Page Boulevard is a four-lane road in Springfield with two travel lanes eastbound and two travel lanes westbound separated by a double yellow line. O'Neil was driving a NYNEX van westbound in the left lane on Page Boulevard when he saw the two girls cross the eastbound lanes and approach the center lines. O'Neil slowed the van and came to a complete stop. The van blocked the girls' view of oncoming westbound traffic.

O'Neil then waved the girls to cross, with a sweeping left to

right motion with his left hand.[3] Woods ran across the front of the NYNEX van and, without looking further, crossed directly into the right lane of westbound traffic where Felix's automobile struck her. At the time, Fettes, who was not hit, was a couple of steps behind Woods.

2. *Discussion of negligence.* The plaintiffs argued that O'Neil in the course of his employment with NYNEX (1) negligently stopped his van when he saw the plaintiff standing on the double yellow line thereby blocking her view of traffic in the northernmost lane and (2) negligently signaled her to proceed. The judge determined that O'Neil was not negligent in stopping as he was required to slow his vehicle and yield pursuant to the seventh sentence of G. L. c. 90, § 14.[4] As to the plaintiffs' theory of negligent signaling by O'Neil, the judge, "assuming such a cause of action to be viable in the Commonwealth," ruled that the plaintiffs had no reasonable expectation of satisfying their burden of proof on the element of proximate causation. Proximate cause, he reasoned, could only be shown by evidence that Woods relied on O'Neil's hand signal when she crossed in front of his van and into the next lane of traffic where she was

---

[3]We view this disputed fact in the light most favorable to the plaintiff, relying, as did the trial judge, on the deposition testimony of William Spano, who testified that he observed, through the back window of the NYNEX van, a silhouette in the NYNEX van waving to the girls as described above. Disregarding the summary judgment standard of review, the defendants discount or eliminate Spano's testimony. They rely instead on the deposition testimony of O'Neil who denies waving and claims that he threw his hands up in the air as a reflex reaction and yelled "no." They also emphasize the results of an investigation performed by an accident reconstruction expert that they retained which suggest that Spano could not have seen the hand signal due to his obstructed view of the driver's seat of the NYNEX van. O'Neil's supplemental response to Woods's interrogatories discloses, however, that the accident reconstruction expert found that eighty-four percent of Spano's view was obstructed, not that it was entirely impossible for Spano to see O'Neil, as the defendants appear to claim in their brief. Spano's deposition testimony, considered in the most favorable light, is more than sufficient to throw into dispute the material fact whether O'Neil signaled to the girls. The defendants have not shown that it was impossible for Spano to have seen a hand signal by O'Neil to the girls. Rather, they have raised questions concerning his credibility. The defendant's legal arguments, to the extent that they are based on the nonexistence of a signal, are therefore rejected.

[4]"Upon approaching a pedestrian who is upon the traveled part of any way and not upon a sidewalk, every person operating a motor vehicle shall slow down." G. L. c. 90, § 14.

struck by Felix. He concluded that summary judgment was appropriate, as the plaintiffs had submitted no testimonial evidence to show that Woods saw or relied on O'Neil's signal, and were unlikely to be able to do so at trial. Woods cannot testify herself due to the severity of her injuries from the accident. Fettes testified at her deposition that she was not looking at the driver and would not have been able to see a signal in any event, as she was not wearing her glasses.

We conclude that the stopping and signaling are too interrelated in the instant case to be analyzed separately. Rather than break O'Neil's response into pieces, we consider his conduct as a whole when he was confronted by the two girls standing on the double yellow lines of the four-lane road on which he was driving.

At issue is whether the defendants can demonstrate that the plaintiffs do not have a reasonable expectation of establishing two elements of their tort claim: breach of a duty and causation. *Kourouvacilis* v. *General Motors Corp.*, 410 Mass 706, 716 (1991) ("[A] party moving for summary judgment in a case in which the opposing party will have the burden of proof at trial is entitled to summary judgment if he demonstrates, by reference to material described in [Mass.R.Civ.P. 56(c), 365 Mass. 822 (1974)], unmet by countervailing materials, that the party opposing the motion has no reasonable expectation of proving an essential element of that party's case").[5] The defendants argue that, even if there were a signal, the only reasonable

[5]The other two elements of the plaintiffs' negligence claim, duty and injury, do not require extensive analysis. The injury to Woods is obvious and uncontested. The duty, albeit the source of some discussion in the briefs, particularly in regard to its origin, is to exercise a reasonable degree of care as an operator of the motor vehicle to avoid injury to pedestrians. See generally *Buckman* v. *McCarthy Freight Sys., Inc.*, 320 Mass. 551, 554 (1947) (operator of tractor trailer truck had duty to exercise reasonable degree of care for pedestrian). See also *Trombley* v. *Stevens-Duryea Co.*, 206 Mass. 516, 518 (1910) ("The statute [predecessor to G. L. c. 90, § 14], while elaborately providing for what shall be done under certain contingencies, does not relieve those in charge or control of the automobile . . . from taking such further precautions as the dictates of ordinary prudence may demand"); *Avery* v. *R.E. Guerin Trucking Co.*, 304 Mass. 500, 505 (1939) (statutory right of way "did not exempt [the defendant] from exercising reasonable care to avoid injury to other travellers along the way"). As an alternative source of duty, the plaintiffs contend that O'Neil's signaling constituted a "voluntary assumption of a

inference that could be drawn from it is that O'Neil intended the girls to cross in front of the NYNEX van, and not into the next lane, and, therefore, even by signaling, he was not in breach of a duty, as matter of law. The defendants contend, as the motion judge found, that in the absence of direct evidence that Woods saw O'Neil's signal and relied on it, the plaintiffs have no reasonable expectation of establishing causation. For the reasons discussed below, we conclude that there are genuine issues of material fact for the jury on both breach of a duty and causation, and the defendant is not entitled to judgment as matter of law.

a. *Breach of duty.* In the few signaling cases that have been decided by the Massachusetts appellate courts, the courts have left for the jury the interpretation of a hand signal, the reasonable inferences that could be drawn from it, and the determination of the over-all questions of negligence and contributory negligence. For example, in *Doyle* v. *Massachusetts Bay Transp. Authy.*, 3 Mass. App. Ct. 726 (1975), there was evidence that an operator of a streetcar "sounded a bell warning and made a hand signal for the plaintiff to cross in front of the streetcar" which then struck him. *Ibid.* Without elaboration, this court concluded it was "for the jury to determine the negligence of either or both of the actors." *Ibid.* Most of the signaling cases, however, predate the comparative negligence statute, made effective in 1971, and address the issue of reasonable care by the plaintiff, and not the defendant's negligence. See *O'Brien* v. *Lexington & Boston St. Ry.*, 205 Mass. 182 (1910); *Cuddy* v. *Boston Elev. Ry.*, 208 Mass. 134 (1911); *Hennessey* v. *Boston*

duty" regarding the girls. See *Mullins* v. *Pine Manor College*, 389 Mass. 47, 53 (1983); *Cottam* v. *CVS Pharmacy*, 436 Mass. 316, 323-324 (2002). See also Restatement (Second) of Torts § 323 (1965) ("One who undertakes, gratuitously . . . to render services to another which he should recognize as necessary for the protection of the other's person . . . is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if [a] his failure to exercise such care increases the risk of such harm, or [b] the harm is suffered because of the other's reliance upon the undertaking"). As the two contested issues in the instant case — whether the signaling constituted a failure to exercise reasonable care under the circumstances, and whether there was reliance on the signaling — require the same analysis regardless of the origin of the duty, we do not analyze the "voluntary assumption of duty" argument separately.

*Elev. Ry.*, 211 Mass. 524, 525 (1912); *Sullivan* v. *Boston & Me. R.R.*, 242 Mass. 188 (1922). More importantly, none has addressed a signaling accident in which a third party struck the plaintiff.

Courts in a number of other jurisdictions have held that a driver's signaling creates a jury question concerning negligence where a third party injures the plaintiff.[6] Other courts have upheld the allowance of motions for summary judgment or directed verdict. They have done so by (1) concluding that a motorist's hand signal can be interpreted to do no more than yield the right of way, at least where the signaling driver is not in a position to determine whether it is safe for the plaintiff to proceed into the next lane, or (2) determining that the person signaled had a nondelegable duty to look for oncoming traffic.[7] Most, if not all, of the cases allowing summary judgment in

---

[6]See, e.g., *Frey* v. *Woodward*, 748 F.2d 173, 176 (3d Cir. 1984) (interpreting North Carolina law, determining that summary judgment is not appropriate where the "verbal and hand signal [given] could be found by the trier of fact to have been intended and reasonably understood not merely as a waiver of . . . right to proceed . . . but as a representation that he could observe the [other] lane and it could be safely entered"); *Cunningham* v. *National Serv. Indus., Inc.*, 174 Ga. App. 832, 838 (1985) (material issues of fact for jury in signaling case); *Sweet* v. *Ringwelski*, 362 Mich. 138, 144 (1961) (directed verdict should not have been granted for defendant where ten year old girl was waved forward by driver of truck blocking her view of other lane); *Miller* v. *Watkins*, 355 S.W.2d 1 (Mo. 1962) (jury question presented by driver who waves to children to cross in front of his truck and they are hit by another car); *Bell* v. *Giamarco*, 50 Ohio App. 3d 61, 63 (1988) ("While an adult may have no right to rely on hand signals from drivers beckoning them to turn or cross the street, we conclude that a [five year old] child who so relies may properly seek to hold the operator liable," and directed verdict for defendant was improper) (citations omitted); Martinez *vs.* Martinez, No. E2000-01990-COA-R3-CV (Tenn. Ct. App. March 15, 2001) ("a driver who signals another driver that the way is clear for the other driver to turn left . . . is guilty of negligence if he or she fails to exercise due care in ascertaining that the way is clear"; summary judgment for defendant reversed). See generally Conder, Motorist's Liability for Signaling Other Vehicle or Pedestrian to Proceed, or to Pass Signaling Vehicle, 14 A.L.R. 5th 193 (1993).

[7]See, e.g., *Diaz* v. *Krob*, 264 Ill. App. 3d 97, 100 (1994) (no legal duty found as a matter of law; "adult pedestrian with no obvious impairments should be held responsible for deciding whether gestures and directions given by a motorist can be safely followed"); *Dawson* v. *Griffin*, 249 Kan. 115, 122 (1991) (case involving "phantom truck driver" who waved other motorist to proceed; summary judgment affirmed as plaintiff had a nondelegable duty to yield to oncoming traffic as she made a left turn); *Shank* v. *Government*

these third party signaling cases involved injuries to adults, not children.[8]

We conclude that in the circumstances of this case, O'Neil's signaling presents a jury question regarding O'Neil's negligence. We cannot rule as matter of law that his signal to the girls could only be interpreted as allowing them to pass in front of his van or that his duty to the girls extended no further than the front of his van. Although a more difficult question would have been raised if the girls were adults, "[t]he law . . . makes allowances for the impulsiveness and lack of maturity and experience of children." *Brown* v. *Knight*, 362 Mass. 350, 352 (1972).[9] As the Michigan Supreme Court stated in a case presenting similar facts, the court should not determine, "as a matter of law, the intended meaning of [the] waving action and, more important, the thought that it might reasonably have been anticipated would be conveyed thereby to the 10-year-old girl." *Sweet* v. *Ringwelski*, 362 Mich. 138, 144 (1961).[10]

In sum, the defendants have not demonstrated that the

*Employees Ins. Co.*, 390 So. 2d 903, 905 (La. Ct. App. 1980) (no duty to adult to assure safe passage across remainder of four-lane highway); *Hoekman* v. *Nelson*, 614 N.W.2d 821, 824-825 (S.D. 2000) (no duty to ensure safe passage across the remaining lane of traffic, as defendant was not in position to view all traffic coming from the rear); *Devine* v. *Cook*, 3 Utah 2d 134, 148, 149 (1955) (defendant in no position to give adult plaintiff any assurance that there was no traffic approaching nor did he have a duty to do so; court nonetheless acknowledges that, under certain conditions, such a signal might "be responsible for an accident in which the person relying upon such signal . . . became involved"); *Nolde Brothers, Inc.* v. *Wray*, 221 Va. 25, 28 (1980) (no jury question presented by driver's hand signal where driver is not in a position to ascertain whether a person receiving signal may safely proceed).

[8]The different considerations presented when the victim is not an adult are discussed below.

[9]See also *DiIorio* v. *Tipaldi*, 4 Mass. App. Ct. 640, 643 (1976). Contrast *McDonald* v. *Consolidated Rail Corp.*, 399 Mass. 25, 31 (1987) (rule that "there is no right to presume that a child of tender years will either get out of the way or remain out of the way of an approaching train" does not apply to sixteen year old).

[10]See also *Hennessey* v. *Boston Elev. Ry.*, 211 Mass. at 525 (question for jury "whether the plaintiff exercised such care as he was bound to exercise and as naturally would be expected from a boy his age, and whether he should have looked again to see if a car was coming"); *Sullivan* v. *Boston & Me. R.R.*, 242 Mass. at 192-193 (court reluctant to rule out inference that twelve year old boy was relying on flagman or require as a matter of law that boy look himself before crossing train tracks); *Tryon* v. *Lowell*, 29 Mass. App. Ct.

plaintiffs have "no reasonable expectation of proving [breach of duty,] an essential element" of their case, given the following facts and the reasonable inferences that could be drawn from them: (1) the age of Woods, (2) the truck's stopping and blocking of her view of westbound traffic, (3) the rush hour conditions, (4) the signaling as described by Spano, and (5) Woods's immediate crossing after the signal both in front of the van and into the next lane.

b. *Causation.* The defendants argue nonetheless that the plaintiffs cannot establish that O'Neil's signaling was the proximate cause of Woods's injuries. Neither Fettes, nor Spano, nor any other witness saw Woods look at O'Neil while he signaled. The plaintiffs' inability to show Woods's reliance, the defendants claim, means that the plaintiffs cannot show that any act or failure to act by the defendants caused her injuries. Woods caused her own injuries, according to the defendants, when, without looking, she ran into the path of an oncoming car.[11]

The defendants' assertion discounts entirely the deposition testimony of Spano, who testified that O'Neil signaled the girls to cross the road, and that Woods thereafter ran without looking in front of the NYNEX van and into the right lane of traffic. The defendants' insistence that Woods's reliance on O'Neil cannot be shown is also undermined by certain uncontested facts of the accident. According to all witnesses (including O'Neil), Woods and Fettes stopped on the double yellow line dividing the four lanes of Page Boulevard before proceeding across the second two lanes of traffic. There, they waited for two cars to go past before O'Neil stopped the NYNEX van and signaled. Woods's actions support a "rational inference of probabilities from established facts" that Woods relied on a signal from O'Neil before deciding to cross the remaining lanes of Page Boulevard. *Zezuski* v. *Jenny Mfg. Co.*, 363 Mass. 324, 329 (1973).

---

720, 722-723 (1991) (summary judgment inappropriate in a case in which a train injured boy; "his capacity as 'a reasonable twelve-year old' is a question of fact").

[11]As a fallback argument, the defendants note that there is no duty to warn of an obvious or readily discovered hazardous condition. The line of cases they cite, concerning a property owner's awareness of hazardous conditions on the property and his duty to warn invitees, is not relevant to the facts at hand. See, e.g., *Wilson* v. *Conlin*, 338 Mass. 295, 297 (1959).

3. *Settling tortfeasor.* The plaintiffs twice sought, via motions pursuant to Mass.R.Civ.P. 54(b), 365 Mass. 820 (1974), to stay the proceedings against Felix, whose settlement had not yet been formalized by a judgment, while entering a final judgment for NYNEX and O'Neil. These various motions were all apparently directed at the issue of retaining a settling tortfeasor in the case for the purpose of allocating percentages of negligence pursuant to G. L. c. 231, § 85.[12] The first motion was denied, on the ground that staggered appeals are strongly disfavored. The plaintiffs moved for reconsideration, arguing, without elaboration, that (1) "Felix is only being kept in the case for purpose of our joint tortfeasor law" and (2) there would not be two appeals as Felix had settled. The judge again denied the motion, ruling that allowing one defendant to remain in the case "while all other parties pursue an appeal . . . [is] disfavored."

The plaintiffs then moved for approval of a form of agreement for judgment. Included in their proposed judgment was language providing: "should the plaintiffs' claims . . . reach trial, the jury is to be instructed that defendant Felix's negligence must be considered in any determination of the comparative negligence of Amy Woods; i.e., Amy Woods' negligence, if any, is to be 'compared to the total negligence of all persons against whom recovery is sought,' including defendant Felix." This form of judgment was denied, and an agreement for judgment without conditions against Felix was finally executed.

The judge was within her discretion in denying the rule 54(b) motion for the reasons stated. See *Long* v. *Wickett*, 50 Mass. App. Ct. 380, 388 (2000). We also agree with the defendants that the plaintiffs cannot dictate which instructions a judge will give before a trial has even occurred, and that the judge's order denying the motion seeking approval of the form of judgment was therefore within her discretion. The plaintiffs would have

---

[12]General Laws c. 231, § 85, as amended by St. 1973, c. 1123, § 1, provides in part: "In determining by what amount the plaintiff's damages shall be diminished in . . . a case [in which contributory negligence is present], the negligence of each plaintiff shall be compared to the total negligence of all persons against whom recovery is sought. The combined total of the plaintiff's negligence taken together with all of the negligence of all defendants shall equal one hundred per cent."

us nonetheless reach the undecided substantive issue underlying their request to the judge.[13] Such consideration by this court would be premature. As summary judgment has been reversed, the plaintiffs are not foreclosed from directly presenting the issue to the trial judge for consideration on the merits.

4. *Conclusion.* The judgment in favor of defendants O'Neil and NYNEX is reversed. The orders denying the plaintiffs' (1) motion for entry of final judgment pursuant to rule 54(b) and for stay of proceedings, (2) the related motion for rehearing, and (3) motion for approval of form of agreement for judgment are affirmed.

*So ordered.*

---

[13]There is apparently "no Massachusetts decision which squarely resolves the question whether a defendant who has settled should be included as a defendant for purposes of allocating percentage shares of negligence under G. L. c. 231, § 85." *Laveck* v. *Pascoe Pizza, Inc.,* 29 Mass. App. Ct. 935, 938 n.6 (1990). See Glannon, Liability of Multiple Tortfeasors in Massachusetts, 85 Mass. L. Rev. 50, 60 (2000).