Merrick, J.
Plaintiff Elizabeth A. Jordan brought this action to recover for injuries she sustained when bitten by a dog named “Osiris” at the home of his owner, defendants Jeffrey and Linda Free. The owners were defaulted.[2] Summary judgment was entered against the plaintiff on her additional claims in negligence against defendant Manomet Animal Hospital, Inc. (“Manomet”), where Osiris was boarded until he was acquired by the Frees, and defendant David Sullivan, the Frees’ landlord. The plaintiff filed this Dist./Mun. Cts. R. A. D. A., Rule 8C, appeal.
Osiris, a so-called “pit bull,”[3] was owned by Charles Jeffrey for about a year. When he could no longer keep Osiris, Mr. Jeffrey advertised him for free adoption. In the interim, Mr. Jeffrey boarded the dog at the Manomet Animal Hospital. Manomet was aware from Mr. Jeffrey, from the dog’s veterinary records, and from the observations of its employees that Osiris was aggressive and given to growling at the approach of a stranger or a male. It could be found that Manomet was aware that Osiris had dangerous tendencies.
Jeffrey Free responded to Charles Jeffrey’s advertisement, and the two men met at Manomet to transfer ownership of Osiris. It was necessary for Mr. Jeffrey to pay Manomet’s bill for the dog’s boarding before Mr. Free could take him. The person on duty at Manomet at the time was a dog groomer who was acting as receptionist. Of his visit to Manomet, Free testified at his deposition as follows:
Q. And at the point you examined the dog, did you get to talk with anybody from the hospital?
*136 A. Yes. There was a chick there, .and she said that the dog was fine. You know, he was playful. He liked his big blue ball. That’s about... And he didn’t like hats and hoods and sunglasses.[4]
Manomet neither sold Osiris, nor brokered the dog’s adoption, and had told Charles Jeffrey that it would not do so. The animal hospital received no compensation for the adoption and undertook no legal relationship with Mr. Free, the dog’s new owner.
Mr. Free took Osiris to his home, which he and his wife rented from defendant David Sullivan (“the landlord”). The rental of the premises was pursuant to a lease which prohibited pets. The landlord, however, was aware of the dog and told Mrs. Free that while he did not care about it, he would deny knowledge of the dog’s presence if any problem arose.[5] The plaintiff was bitten by Osiris shortly thereafter.
1. Manomet sought summary judgment on the plaintiff’s claim for negligence on the ground that it owed no duty to exercise care in connection with the transfer of Osiris. The plaintiff contends that Manomefs groomer-receptionist voluntarily provided some information and should, therefore, be held to an exercise of reasonable care in the provision of information, even if gratuitously, to Mr. Free. However, in the cases upon which the plaintiff relies, the duty, if to some degree voluntary, arose out of the defendant’s legal relationship with the plaintiff. See Cottam v. CVS Pharmacy, 436 Mass. 316, 323 (2002) (pharmacy providing list of side effects to its customer); Mullins v. Pine Manor College, 389 Mass. 47 (1983) (college to resident student); and Woods v. O’Neil, 54 Mass. App. Ct. 768 (2002) (motor vehicle operator to pedestrian). See also Jupin v. Kask, 447 Mass. 141 (2006) (duty to use care to see that husband’s guns were safely locked to prevent use by adult stepson with dangerous tendencies arose out of duty as a property owner). The boarder of a dog owes no duty to the parties to a transaction in which it has no legal interest or involvement. Thus, the gratuitous and true, if incomplete, warning of an employee created no duty to investigate, comment or warn further. Manomet was under no duty to Free and, certainly, not to the plaintiff.
2. There is no question that the landlord, a property owner, owed a duty of reasonable care to persons lawfully on the premises, including social invitees of his tenant such as the plaintiff. Vertentes v. Barletta Co., 392 Mass. 165, 173 (1984). Nor is there any question that, given the lease provision regarding pets, the landlord had authority to require the Frees to remove Osiris from the premises.
The question is instead whether there is any evidence sufficient to create a genuine issue of material fact as to the landlord’s negligence. There is no evidence *137 that the landlord had any information that Osiris had dangerous propensities. The plaintiff asserts, without supporting authority, that a so-called “pit bull” is dangerous by definition. However, “[d]ogs are regarded by the common law as ordinarily harmless animals.” Splaine v. Eastern Dog Club, Inc., 306 Mass. 381, 385 (1940), quoting Andrews v. Jordan Marsh Co., 283 Mass. 158, 161 (1933). As the landlord’s knowledge of the mere presence of the dog on his property was insufficient to permit a finding of negligence, Goodwin v. E.B. Nilson Grocery Co., 239 Mass. 232, 234 (1921), there was no error in the entry of summary judgment for the landlord. Kourouvacilis v. General Motors Corp., 410 Mass. 706, 711 (1991).
The summary judgment motions of defendants Sullivan and Manomet Animal Hospital were properly allowed.
Judgments affirmed.
So ordered.

 Pursuant to G.L.c. 140, §155, the Frees were strictly liable for any damage to person or property caused by their dog. See generally Audette v. Commonwealth, 63 Mass. App. Ct. 727, 734 (2005).

 Although all parties have so described the dog, “pit bulls” are not a breed as such. Moreover, a dog’s appearance can be misleading in determining whether the dog is of a breed “commonly understood” to be “pit bulls.” American Dog Owners Ass’n, Inc. v. City of Lynn, 404 Mass. 73, 80 (1989).

 Later in his deposition, Mr. Free disavowed the quoted testimony, and said that “the chick” did not say any of those things about the dog and that they were instead said by Mr. Jeffrey, the prior owner. Free also stated that he did not ask any question of the groomer-receptionist because “the lady at the animal hospital was an average kid doing her day-after-day after school job or whatever. You know, so I don’t think that she had a whole biography on the dog so I did not feel it necessary to interrogate the woman.” Free was at Manomet for “[a]bout five, ten minutes.” For purposes of summary judgment review, however, we use that portion of Free’s testimony most favorable to the plaintiff. Gurry v. Cumberland Farms, Inc., 406 Mass. 615, 622 (1990). Further, the rule that a party may not create a question of fact to defeat summary judgment by making contradictory statements, see Hanover Ins. Co. v. Leeds, 42 Mass. App. Ct. 54, 58 (1997), does not apply where the conflicted party is not the party opposing summary judgment.

 Again, although the landlord disputes these alleged facts, we must view the record in the light most favorable to file opponent of summary judgment. Coveney v. President & Trustees of the College of the Holy Cross, 388 Mass. 16, 17 (1983).